841 So.2d 72 (2003)
The COUNCIL OF The CITY OF NEW ORLEANS
v.
ALL TAXPAYERS, PROPERTY OWNERS, Citizens of the City of New Orleans and Non-Residents Owning Property or Subject to Taxation Therein, et al.
No. 2003-CA-0189.
Court of Appeal of Louisiana, Fourth Circuit.
February 24, 2003.
Writ Denied April 4, 2003.
*74 Albert A. Thibodeaux, Chief Deputy City Attorney and Harold B. Judell, Wayne J. Neveu, Meredith L. Hathorn, O. Ray Cornelius, Foley & Judell, L.L.P., New Orleans, LA, and David E. Henderson, Foley & Judell, L.L.P., Baton Rouge, LA, for Plaintiff/Appellee.
Cameron C. Gamble, Cameron C. Gamble, A PLC, and Michael A. Duplantier, and Camille Jones Strachan, New Orleans, LA, for Defendants/Appellants.
Court composed of (Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR.).
PATRICIA RIVET MURRAY, Judge.
Defendants, a group of taxpayers, property owners and residents of New Orleans, appeal the district court's granting of the motion for judgment filed by the Council of the City of New Orleans [hereinafter "the City Council"] pursuant to the "Bond Validation Act" (La. R.S. 13:5121 et seq.), which motion sought to have the court declare valid a proposed bond issue prior to the marketing of the bonds. For the reasons that follow, we affirm the judgment of the district court.
FACTS AND PROCEDURAL HISTORY
On November 25, 2002, the City Council filed its Motion for Judgment seeking a judicial declaration of the validity of the November 22, 2002, Bond Resolution authorizing the incurrence of debt and the issuance of a maximum of twenty million dollars of "Sales Tax Increment Revenue Bonds" ["the Bonds"] for the purpose of financing a proposed economic development project, as authorized by La. R.S. 33:9033.3 (part of the "Cooperative Economic Development Law," La. R.S. 33:9020, et seq.). In its motion, the City Council asserted that it had previously adopted Ordinance Calendar No. 24,036, which had established the boundaries of an economic development area known as the St. Thomas Development District ["the District"] and had declared the construction of a new mixed-income housing project ["the Project"]on the site of the former St. Thomas public housing project to be an "economic development project" within the meaning of La. R.S. 33:9033.3(M). Further, the City Council asserted that it had, by Ordinance Calendar No. 24,072, determined the sales tax increment to be used in financing the aforementioned Bonds to be the City's 2.5 percent share of the sales tax, as defined in R.S. 47:301 et seq., collected annually in the District. As asserted in the Motion, the Bonds are to be limited obligations of the City secured solely from this increment of the sales tax paid solely by the Wal-Mart store (or any replacement or successor retailer) expected to occupy the *75 District. Terming the project a cooperative endeavor among the City, HANO (the Housing Authority of New Orleans) and HRI (Historic Restoration Incorporated for the Housing Authority of New Orleans St. Thomas Development), the City Council asserted that it had adopted, by Ordinance Calendar Nos. 24,465 and 24,480, the "Development Agreement" to further provide information relative to the use of the proceeds of the Bonds for the Project. Therefore, the City Council moved that the court establish the validity of the Bonds, the Bond Resolution, the aforementioned Ordinances, the Development Agreement, and certain related documents (the "Project Documents") according to the procedure set forth in the Bond Validation Act.
As prescribed in La. R.S. 13:5123-5124, the Motion for Judgment was served on all taxpayers, property owners and residents of the City by means of publication in the Times-Picayune. Defendants herein filed an Answer, Reconventional Demand, and Exceptions of prematurity, vagueness, and failure to state a cause of action.[1] In accordance with the expedited procedure outlined in La. R.S. 13:5126, a hearing was held in the district court on January 2 and January 6, 2003. The court overruled the exceptions from the bench. At the conclusion of the hearing, the court expressed its intention to grant the City Council's Motion for Judgment and gave reasons. On January 8, 2003, the court rendered written judgment declaring valid and legal the Bonds (and all other related documents listed in the Motion) and decreeing, pursuant to La. R.S. 13:5129, that its judgment (in the absence of reversal on appeal) was conclusive and forever binding and constituted a permanent injunction against any future challenge to the validity of the Bonds.
From that judgment, defendants have taken an expedited appeal as provided in La. R.S. 13:5128. Defendants assert seven issues on appeal, which we address separately.
DISCUSSION
I. Whether the City Council produced sufficient evidence to meet its burden of proof
In this assignment of error, defendants argue that the City Council's failure to produce certain documents should have precluded the court from validating the Bonds. Specifically, defendants contend that the City Council failed to introduce into evidence the "Supplemental Resolution" (referred to in the Bond Resolution), the Development Agreement, and the Project Documents.
The Bond Validation Act is silent as to what evidence or what type of evidence must be introduced by the governmental entity in order to meet its burden of proof; however, the Act does provide that
No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it find substantial defects, material errors and omissions in the incidents of such bond issue. Matters of form shall be disregarded.
La. R.S. 13:5130 (emphasis supplied).
Defendants argue that the absence of the aforementioned documents constitutes a material error or omission. This argument is neither accurate nor persuasive.
Contrary to defendants' assertion, the "Project Documents" and the "Development *76 Agreement," as those terms are defined in the Motion for Judgment,[2] were attached as exhibits to the City Council's memorandum in support of its motion, and were therefore considered by the district court and are part of this court's record. In view of the nature of the hearing and the stipulation in La. R.S. 13:5130 that matters of form are to be disregarded, whether each of these documents was formally introduced into evidence is immaterial. Moreover, we agree with the trial court that the documents in the record sufficiently describe the project, the source of funds, and all other material issues relevant to the Bonds. The fact that subsidiary documents detailing certain aspects of the project have yet to be created should not preclude judicial validation of the Bonds at this time, considering that the purpose of the Bond Validation Act is "to provide a uniform, expeditious and equitable procedure... for the judicial determination of the validity of bonds and related proceedings where material and substantial questions with regard thereto are involved or a judicial determination ... is necessary to insure the marketability of bonds in investment channels. La. R.S. 13: 5122 (emphasis supplied).
With regard to the "Supplemental Resolution," the district court correctly determined that its absence is of no consequence because it can only be executed upon the actual sale of the bonds. The contemplated supplemental resolution, referred to generally in the Bond Resolution, will be executed in the future to establish the "specific interest rates and principal maturities, etc." of the Bonds at the time of pricing and sale. One of the express purposes of the bond validation procedure is to allow the governmental entity to market the bonds to prospective bondholders by means of an offering circular or private placement memorandum which must contain no material misstatements or omissions; the judicial validation allows the bonds to be marketed without a cloud of uncertainty. Following their marketing, it is anticipated that the Bonds will be awarded to a purchaser pursuant to a supplemental resolution that fixes the final terms of the bonds within the parameters of the initial authorization. The absence of such a supplemental resolution at this point is therefore expected, and should not defeat the bond validation.
We therefore reject this assignment of error.
II. Whether the district court erred by denying defendants' request for discovery
Defendants contend that their constitutional right to procedural due process was denied when the district court refused to grant their motion for adjournment to permit further discovery. Defendants served the motion on the City Council on the morning of the hearing, accompanied by a Request for Admissions and Supplemental Interrogatories and Request for Production, which were proffered after the court refused to adjourn the hearing to allow time for the City Council to respond to the discovery request.
There is no constitutional right to discovery; discovery is a statutorily created privilege. See La.Code Civ. Pro. arts. 1421 and 1422. It is well established that trial courts in Louisiana have broad discretion *77 in regulating pretrial discovery, which discretion will not be disturbed on appeal absent a clear showing of abuse. Moak v. Illinois Central Railroad Company, 93-0783 (La. 1/14/94), 631 So.2d 401, 406. In the instant case, the district court had to balance the defendants' need for further discovery against the expedited nature and limited scope of the bond validation proceeding.
The record reflects that the district court judge made reasonable decisions with regard to discovery. The trial court was cognizant of the fact that some of the documents sought by the defendants through discovery did not yet exist, whereas other information could have been obtained by referring to the public records of the City Council's prior proceedings; none of the information sought, however, was essential to the bond validation procedure. Although the court refused to adjourn the matter entirely to permit general discovery, the judge did continue the hearing for several days to give the defendants an opportunity to investigate a particular allegation of the City Council which they challenged: that no portion of the sales tax revenue to be used for the Bonds had been previously dedicated to a special purpose. In that instance, when the hearing reconvened, the defendants admitted that they had found no evidence of a previous dedication other than to "general municipal purposes," and therefore they stipulated to that fact.
Having thus determined that the documents submitted by the City Council were sufficient to establish the legality of the Bonds and the security for the Bonds, the district court decided that no further discovery was necessary or appropriate. After reviewing the record and the proffered evidence, we cannot say the district court abused its discretion in this regard. We therefore reject this assignment of error.
III. Whether the Bonds violate La. R.S. 33:9033.3 by misusing public funds previously dedicated for a special purpose and/or by impairing existing obligations of the City
La. R.S. 33:9033.3, the so-called "TIF statute," is a provision of the Economic Development Law that allows municipalities to fund economic development projects by issuing revenue bonds payable or secured by a pledge of "sales tax increments," which are defined as that portion of the designated sales tax (as defined by La. R.S. 47:301), collected each year from taxpayers within an economic development area, which exceeds the designated sales tax revenues that were collected in the year immediately prior to the year in which the area was designated as an economic development area. The TIF statute also provides that dedication of sales tax increments to pay revenue bonds "shall not impair existing obligations and shall not include tax revenues previously dedicated for a special purpose...." La. R.S. 33:9033.3(A).
Defendants stipulated at the hearing that the designated sales tax has not been previously dedicated for a special purpose other than for "general municipal purposes," which is the only limitation on expenditure of sales taxes contained in the ordinances authorizing the collection of those taxes by the City of New Orleans; nevertheless, defendants argue that this limitation amounts to a dedication "for a special purpose" within the meaning of La. R.S. 33:9033.3.
The district court summarily rejected this argument, and we find no error in that conclusion. Louisiana Civil Code article 11 provides that the words of a law must be given their generally prevailing meaning. Despite defendants' attempts to *78 convince us otherwise, we believe that the phrase "general municipal purposes," connotes any purpose that will generally benefit the municipality, and clearly does not equate to a "special purpose," such as the dedication of certain taxes to fund the Regional Transit Authority or the public schools. We therefore agree with the district court that the defendants failed to show that the dedication of the designated sales tax increments to finance the Bonds either impairs any existing obligation of the City or includes tax revenues previously dedicated for a special purpose.
Accordingly, we reject this assignment of error.
IV. Whether the City failed to comply with the requirements of the TIF statute, which are prerequisites to validation of the Bonds
In an argument raised for the first time in this court, the defendants contend the City Council has failed to comply with certain requirements of the TIF statute, namely, the requirement to create an "economic development plan" and to execute a "cooperative endeavor agreement."[3] This argument fails for two reasons.
First, under La. R.S. 33:9033.3(K), a municipality is authorized to carry out certain purposes of the Economic Development Law without creating an economic development corporation, and any municipality that creates a sales tax area and issues revenue bonds pursuant to the TIF statute is specifically exempted from the requirements of La. R.S. 33:9023-9026, which include the requirement to formulate an "economic development plan." Therefore, the City is exempt from this requirement.
Secondly, although the terms "economic development plan" and "cooperative endeavor agreement" appear in various other sections of the Economic Development Law, neither are mentioned in the TIF statute (La. R.S. 33:9033.3). More importantly, defendants have not cited any authority to support their assertion that either an economic development plan or a cooperative endeavor agreement is a prerequisite to judicial validation of these Bonds.
We therefore reject this assignment of error.
V. Whether the TIF statute is unconstitutionally vague and, therefore, invalid
Defendants argue that La. R.S. 33:9033.3 is unconstitutionally vague and indefinite because it fails to adequately define its terminology, which allows an "arbitrary and capricious interpretation and implementation of the statute by local governing authorities." Specifically, defendants contend that the statute is unconstitutionally vague because it fails to adequately define the term "economic development."
Unless the fundamental rights of a person are involved, legislative acts are presumed to be constitutional. Board of Directors of the Louisiana Recovery District v. All Taxpayers, 529 So.2d 384, 387 (La.1988). This presumption is especially forceful in the case of statutes enacted to promote a public purpose, such as those relating to taxation and public finance. Id. The party attacking such a statute has the burden of showing clearly that the legislation is invalid or unconstitutional, with any doubt to be resolved in favor of constitutionality. *79 Id. This court has held that a law may be impermissibly vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so he may act accordingly, or if it does not provide a standard to prevent arbitrary and capricious application. Inter Urban Bar Association of New Orleans v. City of New Orleans, 93-1006, p. 2 (La. App. 4 Cir. 3/16/95), 652 So.2d 1038, 1040.
La. R.S. 33:9033.3(M) states, in pertinent part:
For the purposes of this Section, the term "economic development project" shall mean and include, without limitation, any and all projects suitable to any industry determined by the municipality... to create economic development. Economic development projects shall include, without limitation, the following industries:
(1) Industrial, manufacturing, and other related industries.
(2) Housing and related industries.

* * *
(8) Any other industry determined by the municipality ... whose assistance will result in economic development.
We do not find the term "economic development," as used in this section, to be so vague that a person of ordinary intelligence would not understand its meaning, or so broad that it allows for an arbitrary and capricious application. Moreover, because "housing" is specifically included in the above definition, it is unquestionable that a mixed-unit housing development, which is the specific project to be financed by the instant Bonds, would be considered economic development under the TIF statute. Therefore, we find that the defendants have failed to meet their burden of proving that the TIF statute is unconstitutionally vague.
We reject this assignment of error.
VI. Whether the City Council has failed to establish a "public purpose" for the issuance of the bonds, as required by Louisiana Constitution Article VII, Section 14
Defendants argue that the validation of the Bonds is in violation of the "public purpose" clause of the Louisiana Constitution because the City Council is using the Bonds as a means of diverting public funds to benefit private entities. Article VII, Section 14(A) of the Constitution provides that the funds of the state or of a political subdivision "shall not be loaned, pledged or donated to or for any person, association, or corporation, public or private."
Defendants' contention that the project to be financed by the Bonds violates this Section because it will benefit private persons and entities ignores the fact that the Project, as proposed, will also benefit the public by stimulating the economy and by providing affordable public housing for low-income families.[4] Section 14(B) of Article VII provides exceptions to the prohibition of Section 14(A). It provides, in pertinent part:
(B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy
....
Because it will provide public housing, the Project fits within the above exception as a program of social welfare, and therefore promotes a public purpose. Moreover, Section 14(C) of Article VII specifically *80 authorizes cooperative endeavors, such as the contemplated project:
(C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
Accordingly, we find that the defendants failed to establish that the project to be financed by the Bonds is in violation of Article VII, Section 14 of the Louisiana Constitution.
We therefore reject this assignment of error.
VII. Whether the TIF Statute is unconstitutional as applied because it confers unequal privileges and financial advantages on purely private interests
Again, defendants argue that the TIF statute, La. R.S. 33:9033.3, is unconstitutional because it allows the diversion of public funds to private interests in violation of the aforementioned Article VII, Section 14, of the Louisiana Constitution. As we noted above, Section 14(C) of that Article specifically authorizes cooperative endeavors between political subdivisions and private entities. Defendants have not produced sufficient evidence to rebut the presumption of constitutionality of the statute. We have found no authority to suggest that the constitutional requirement of a public purpose for public funds necessarily excludes any co-existing benefit to private parties. While the defendants may strenuously disagree that the project to be financed by the instant Bonds will benefit the community, they have been unable to show that the intention or objective of benefiting the community does not exist as the impetus for the project, or that the project lacks a "public purpose."
We therefore reject this assignment of error.
CONCLUSION
Accordingly, for the reasons stated, we find that the district court did not err in granting the City Council's motion to validate the Bonds, and we affirm the district court's judgment.
AFFIRMED.
NOTES
[1] Defendants also asserted a Third Party Demand against the Louisiana State Bond Commission seeking to invalidate its approval of a resolution authorizing the Bonds, but the demand was never served.
[2] The document referred to as the "Development Agreement" is actually entitled "Third Amendment and Intervention to Development Agreement," which amends certain prior agreements adopted by the City Council and which expressly anticipates that further, more detailed documents, subsequently, will be created to complete the agreement among the City, HANO, and HRI.
[3] Although this argument was not made to the district court, we consider it here for purposes of judicial economy.
[4] The Project specifications call for a minimum of 122 public housing units out of 296 total units to be built in Phase I, and approximately 60 public housing units in Phase II.