894 So.2d 1185 (2005)
WORLD TRADE CENTER TAXING DISTRICT
v.
ALL TAXPAYERS, PROPERTY OWNERS, AND CITIZENS OF WORLD TRADE CENTER TAXING DISTRICT AND NONRESIDENTS OWNING PROPERTY OR SUBJECT TO TAXATION THEREIN, et al.
No. 2005-CA-0048.
Court of Appeal of Louisiana, Fourth Circuit.
February 1, 2005.
*1187 Gary J. Elkins, Richard L. Traina, Jordan B. Monsour, Elkins, P.L.C., New Orleans, LA, for Plaintiff/Appellee, World Trade Center Taxing District.
James M. Garner, Timothy B. Francis, Joshua S. Force, Sher, Garner, Cahill, Richter, Klein, McAlister & Hilbert, LLC, New Orleans, LA, for Intervenor/Appellee, World Trade Center of New Orleans, Inc.
Fred L. Chevalier, Raedtha A. Vasquez, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP, Baton Rouge, LA, for Intervenor/Appellee, WTC Development, LP.
Russ M. Herman, Steven J. Lane, Soren E. Gisleson, Herman, Herman, Katz & Cotlar, LLP, New Orleans, LA, for Intervenor/Appellee, WTC Development, LP.
Kenneth M. Carter, Kenneth M. Carter, PLC, New Orleans, LA, for Intervenor/Appellee, WTC Development, LP.
Robert S. Angelico, Cheryl M. Kornick, K. Todd Wallace, Liskow & Lewis, New Orleans, LA, for Intervenor/Appellant, Greater New Orleans Hotel and Lodging Association.
Joseph R. Ward, Jr., Ward & Condrey, LLC, Covington, LA, for Intervenor/Appellant, Ronnie J. Theriot.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge MAX N. TOBIAS, JR., Judge LEON A. CANNIZZARO Jr., and Judge ROLAND L. BELSOME).
MAX N. TOBIAS, JR., Judge.
The Greater New Orleans Hotel and Lodging Association ("Hotel Association") and Ronnie J. Theriot ("Theriot") (collectively referred to as the "appellants"), intervenors in the captioned litigation, appeal a judgment of the trial court rendered following a new trial that was conducted pursuant to a remand from this court. For the following reasons, we reverse the judgment of the trial court.[1]
On 17 February 2004, the World Trade Center Taxing District ("Taxing District" or "appellee"[2]), a special taxing district and political subdivision of the state provided for in La. R.S. 33:9038.21 (sometimes hereinafter referred to as the "WTC TIF[3] statute"), filed a Motion for Judgment in the Civil District Court for the Parish of Orleans pursuant to La. R.S. 13:5124. Following a hearing, a judgment was rendered as prayed for, and the appellants appealed. Subsequently, this court remanded the matter for a full new trial on the merits.[4] Following the new trial, the *1188 district court rendered judgment making numerous findings of fact and conclusions of law in favor of the appellee. The appellants filed the instant appeal from that judgment.
In their first assignment of error, the appellants assert that the trial court erred as a matter of law in finding that they lacked standing to appear as defendants in this case and to challenge the constitutionality of La. R.S. 33:9038.21. In its judgment, the trial court found that because the appellants introduced no evidence establishing that the Hotel Association, any of its members, or Theriot (i) were taxpayers, property owners, or citizens of the district, (ii) had any right, title, or interest in any property or funds to be affected, and/or (iii) the WTC TIF statute would affect or harm the Hotel Association, any of its members, Theriot, or any of their interests in any respect, they lacked standing pursuant to the Bond Validation Act to challenge the Motion for Judgment.
The Hotel Association points out that this court, on two previous occasions, has recognized it as an "interested party" under the Bond Validation Act, and that it is therefore a proper party to challenge the constitutionality of the WTC TIF statute. Theriot asserts in his brief that despite the district court's "factual finding" that he is not a taxpayer, it was stipulated to at the trial that he is indeed a taxpaying citizen of the state of Louisiana.
We disposed of this issue previously in World Trade Center Taxing District v. All Taxpayers, Property Owners, and Citizens of World Trade Center Taxing District, 04-0572 (La.App. 4 Cir. 5/19/04), 875 So.2d 850, which came before this court pursuant to a supervisory writ filed by the Taxing District in response to the trial court's judgment that allowed the Hotel Association and Theriot to intervene in the litigation. As noted in the opinion:
Relator does not dispute that the Hotel Association and Theriot are interested persons as provided by La. R.S. 13:5126.
Id. at p. 2, 875 So.2d at 852. Further, in World Trade Center Taxing District v. All Taxpayers, 04-1365 (La.App. 4 Cir. 9/1/04), 883 So.2d 459, we stated:
This Court based its decision on the fact that La. R.S. 13:5121, et seq., was controlling, and La. R.S. 13:5126 specifically provided [a]ny property owner, taxpayer, citizen, or other person in interest may become a party to said proceedings by pleading to the motion within seven days after the second publication thereof, or thereafter by intervention upon leave of court. ... The Court reasoned that [g]iven the expedited nature of the validation procedure, the legislatively expressed intent to provide an equitable process with regard for the public fisc and rights of interested parties, plus the procedural exclusivity language in La. R.S. 13:5122, it appears that the legislature implemented La. R.S. 13:5126 to vest the trial court with discretion as to intervention to safeguard the rights of interested parties. There is no time limitation as to intervention expressed in La. R.S. 13:5126. Additionally, there is no case law on point to confirm or negate the foregoing conclusion. [Emphasis in original.]
Id. at p. 5, 883 So.2d at 462. Consequently, we find no need to revisit this issue; the trial court erred in sustaining the appellees exception of no right of action.
*1189 It is undisputed that, pursuant to the WTC TIF statute, patrons of the proposed future World Trade Center ("WTC") hotel would pay hotel occupancy taxes of at least 13%, but the taxes would be collected by the Taxing District to provide the funds necessary to finance the WTC hotel project. In fact, the WTC TIF statute expressly recognizes that, absent legislative action, the patrons of the WTC hotel would be subject to the existing hotel occupancy taxes; the statute expressly relieves the patrons of the WTC hotel from the presently existing hotel occupancy taxes. See La. R.S. 33:9038.21(F)(4)(the substitute TIF tax "shall supersede and be in lieu of" the hotel occupancy taxes). We find that hotel occupancy taxes are in actuality and in fact sales taxes applicable to all hotels in Orleans Parish.
The appellee urges that La. R.S. 33:9038.21 operates as a suspension of law pursuant to La. Const. art. III, § 20. They contend that the WTC TIF statute properly suspends those laws and ordinances that impose the existing hotel occupancy taxes. We disagree.
La. Const. art. III, § 20 states:
Only the legislature may suspend a law, and then only by the same vote and, except for gubernatorial veto and time limitations for introduction, according to the same procedures and formalities required for enactment of that law. After the effective date of this constitution, every resolution suspending a law shall fix the period of suspension, which shall not extend beyond the sixtieth day after final adjournment of the next regular session.
This provision must be read in pari materia[5] with La. Const. art. III, § 12, which states in pertinent part:
(A) Prohibitions. Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
* * *
(7) Creating private corporations, or amending, renewing, extending, or explaining the charters thereof; granting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity....
* * *
(B) Additional Prohibition. The legislature shall not indirectly enact special or local laws by the partial repeal or suspension of a general law.
A statute is unconstitutional as "special legislation" if it affects only a certain number of persons within a class and not all persons possessing the characteristics of the class, and it is directed to secure some private advantage or advancement for the benefit of private persons. In re Trestman, 00-1367, p. 6 (La.App. 4 Cir. 8/1/01), 795 So.2d 398, 402, writ denied, 01-2470 (La.12/7/01), 803 So.2d 34. As stated by the Supreme Court in Kimball v. Allstate Ins. Co., 97-2885, 97-2956, p. 6 (La.4/14/98), 712 So.2d 46, 52:
[A] law will be considered local or special, and therefore subject to the requirements of La. Const. Art. III, §§ 12 and 13, where its restrictions can affect only a portion of the citizens (special) or a fraction of the property (local) embraced within the created classification, ..., and where there is no reasonable basis for the creation of the classification or substantial difference between the class created and the subjects excluded justifying the exclusion.... In contradistinction *1190 to a local or special law, a general law is one which operates equally and uniformly upon all persons brought within the relations and circumstances for which it provides or operates equally upon all of a designated class which has been founded upon a reasonable classification. [Internal citations omitted.]
As with a law that classifies on the basis of geographic conditions or particularly designated localities, a classification of certain parties will not render a law special if it is based on a substantial difference between the class created and the subjects excluded, and there exists a reasonable basis for the distinction. Kimball, p. 6, 712 So.2d at 52. In the case at bar, we find the law to be a special law, but find no reasonable basis for the distinction. The law exempts a facility to be operated as a hotel from paying already existing sales taxes imposed by statutes and ordinances and grants a private entity (the developer) a special privilege to use taxes imposed by the WTC TIF statute for private purposes. It therefore violates La. Const. art. III, § 12(A)(7).
Had a suspension of law occurred, the 13% hotel occupancy tax would have been suspended as to all hotels (presently existing or to be operated in the future). To the contrary, La. R.S. 33:9038.21 relieves only a particular taxpayer located on essentially one parcel of property (occupied by a tower and parking garage) in the city of New Orleans from paying the previously existing hotel occupancy taxes imposed by statutes and ordinances, some of which have been authorized and imposed pursuant to approval by voter propositions.[6] Law, ordinance, and voter proposition presently designate which tax recipient bodies are to receive a specific percentage of the total hotel occupancy tax; some of those tax recipient bodies have dedicated the proceeds of the tax to the payment of bonded indebtedness.
Under the WTC TIF statute, an equivalent tax of 13% is imposed on the premises designated in the act and the moneys derived from the tax are to be used by a private entity, the developer of the contemplated hotel, for its own private purposes. That some of the money (possibly 1.5% of the 13%) might be transferred to a public body (the city of New Orleans and/or the World Trade Center) is of no moment. The transfer of the money is a donation of public money regulated and prohibited by La. Const. art. VII, § 14. The public bodies that have previously imposed the hotel occupancy tax are deprived of revenues lawfully imposed, some of which funds are dedicated for specific purposes as opposed to general purposes. Ergo, La. R.S. 33:9038.21 is not a suspension but rather an exemption or exclusion that is regulated and controlled by La. Const. art. VI, § 29(D).
The appellants contend that the WTC TIF statute violates La. Const. art. VI, § 29(D), which provides in pertinent part:
(D) Exemptions; Protection of Bonds. Except when bonds secured thereby have been authorized, the legislature may provide for the exemption or exclusion of any goods, tangible personal property, or services from sales or use taxes only pursuant to one of the following:
(1) Exemptions or exclusions uniformly applicable to the taxes of all local governmental subdivisions, school *1191 boards, and other political subdivisions whose boundaries are not coterminous with those of the state. [Emphasis added.]
The appellants argue that the WTC TIF statute is unconstitutional because of the statute's purported effect on pre-existing hotel occupancy taxes that are imposed on patrons of all hotels in the city of New Orleans. They contend that because the statute relieves patrons of the WTC hotel from paying the pre-existing hotel occupancy taxes, the WTC TIF statute exempts the WTC hotel patrons from paying the pre-existing taxes that specifically go to various tax recipient bodies and imposes the substitute TIF tax instead. The appellants argue La. Const. art. VI, § 29(D) prohibits the legislature's actions as reflected in the statute. We agree.
The existing hotel occupancy tax of 13% has been allocated to several tax recipient bodies, beginning with the passage of La. Const. art. VII, § 29(D) through voter approval in 1966, which dedicated 1.5% of tax to the Orleans Parish School Board ("OPSB") and 4% of tax to the Louisiana Stadium and Exposition District ("LSED").[7] Thereafter, additional proceeds were dedicated to other entities by statute, such as the New Orleans Exhibition Hall Authority (the "Convention Center") and the Regional Transit Authority ("RTA"), some of which dedications required and received voter approval.[8] The Louisiana Legislature is, therefore, permitted by § 29(D) to grant exemptions or exclusions from sales taxes except when those sales taxes secure outstanding bonds. It was established at trial that both the LSED and the Convention Center taxes secure outstanding bonds; the Taxing District stipulated to the fact at trial.
The trial court held the appellants' constitutional challenges lacked foundation because hotel occupancy taxes were not presently being collected within the Taxing District and "it is impossible for the statute to exempt from payment future taxes the Legislature has expressly determined do not exist and will not exist absent the accomplishment of the District's purpose." However, the factual finding by the legislature does not have the legal effect of amending the pre-existing hotel occupancy taxes so as to render them inapplicable to any new hotel. The legislature must act within constitutional restraints of La. Const. art. VI, § 29(D).
We further reject the trial court's finding that the tax to be levied by the Taxing District on the occupancy of the hotel is a "new" tax. But for the WTC TIF statute, each time a hotel is built, one could argue that the hotel occupancy taxes collected are "new" taxes, in that before the hotel is built, hotel occupancy taxes were not being generated on that particular property. Concomitantly, one could also argue that the hotel occupancy taxes imposed in 1966 cannot be collected from hotels built after that date because the law cannot impose taxes on non-existent entities. Obviously, such arguments are illogical. The hotel occupancy taxes were imposed on all existing hotels and on all future hotels to be built as the hotel industry evolved, thereby providing an ever increasing stream of revenue.
While no cases exist that deal specifically with La. Const. Art. VI, § 29(D), *1192 several Attorney General opinions exist that address the provision. For example, Op. Atty. Gen. No. 77-1283 states:
This constitutional provision is clear, [sic] legislation which provides for exemptions from sales or use taxes will not affect or apply to those sales taxes which at the time of the enactment were used to secure bonds and said exemption will continue to be ineffective as long as said taxes continue to be used as security for those particular bonds.
Op. Atty. Gen. No. 86-563 states:
The power to tax is vested in the legislature. Article VII, Section 1 of the Louisiana Constitution. The legislative power of taxation is unlimited, except where the constitution expressly limits its exercise. Saia Motor Freight Lines, Inc. v. Agerton, 275 So.2d 393 (La.1973). The legislature thus has the power to grant tax exemptions within local enterprise zones not only for the taxes imposed by the state but also for taxes imposed by political subdivisions. Therefore, it is the opinion of this office that the state, when following the procedures outlined in R.S. 51:1781 et seq., may exempt an industrial enterprise zone from sales and use taxes imposed by a school board. However, if the school board, previous to the creation of the industrial enterprise zone, had issued bonds secured by the avails of its sales and use taxes, payment of such taxes would not be exempt under R.S. 51:1787. Article VI, Section 29(D) of the Louisiana Constitution. [Emphasis added.]
Op. Atty. Gen. No. 92-129A reaffirms this conclusion:
R.S. 47:305.30 authorizes the Plaquemines Parish School Board to grant local sales tax exemptions on food and prescription drugs. However, bonds secured by the sales tax in question were authorized prior to the school board's resolution granting the exemptions. Thus, Art. VI, Section 29(D) prohibits the application of the exemptions to the subject tax. [Emphasis added.]
And finally, Op. Atty. Gen. No. 93-261 states in pertinent part:
It is the opinion of this office that the Recovery District is subject to the exemptions set forth in R.S. 47:301, et seq. as of the effective date of the Recovery District's act, namely March 28, 1988. Furthermore, the Recovery District does not have the innate authority to suspend or eliminate the exemptions found in R.S. 47:301, et seq.; however, the legislature may enact legislation to authorize the Recovery District to suspend or eliminate the exemptions from its sales tax, after which the Board of Directors of the Recovery District may take action to suspend or eliminate the exemptions. Inasmuch as the proceeds of the tax secure the outstanding bonds of the District, the legislature does not have the authority to unilaterally suspend or eliminate the exemptions from the District's tax. See Art. VI, Sec. 29(D) of the La. Const. of 1974. [Emphasis added.]
We find the answer to this issue clear: La. R.S. 33:9038.21 is unconstitutional because certain proceeds of the tax presently secure outstanding bonds issued by the LSED and the Convention Center. Consequently, the statute violates La. Const. art. VI, § 29(D).
La. Const. art. VI, § 29(D) also provides that the legislature may only enact exemptions or exclusions from sales taxes (unless those taxes secure outstanding bonds) when those exemptions or exclusions are "uniform." The appellants argue that since the WTC TIF exemption is only applicable to the Taxing District, the exemption *1193 is not uniform and further violates § 29(D).
In response, the appellee urges that the uniformity requirement does not apply to the WTC TIF statute because the statute, at most, suspends the existing hotel occupancy taxes during the thirty-one year term of the district.[9] The appellee argues that the statute cannot exempt any taxes within the Taxing District because no hotel occupancy taxes exist within the district to be exempted. In addition, the appellee contends that the patrons of the WTC hotel are not relieved from paying a hotel occupancy tax; the patrons will still pay the tax, but the allocation of the tax revenues will be different.
Both sides rely on BP Oil Co. v. Plaquemines Parish Government, 93-1109 (La.9/6/94), 651 So.2d 1322. In that case, BP Oil was assessed a use tax by the Plaquemines Parish Government. One of the issues in BP Oil revolved around the application of a legislative suspension of tax exemptions. The legislature suspended a portion of various state sales and use tax exemptions. BP Oil argued that the suspension of exemptions only applied at the state level and not to local governments. The trial court, relying on La. Const. art. VI, § 29, held that the suspension must apply uniformly to both state and local governments, and the school board. The Supreme Court agreed, but remanded the case for a determination based on the various types of suspensions that were applicable at various times.
However, on rehearing, the Supreme Court stated:
Although La. Const. Art. VI § 29(D) grants the Legislature the discretion to exempt or exclude goods, property and services from sales and use taxes, there appears to be some requirement of uniformity in enacting the exemptions or exclusions. We have concluded, however, that we need not decide in this case the meaning of the scope of any uniformity requirement for exemptions or exclusions in Section 29(D), because the present case involves only the suspension of a law enacted by the Legislature.
Id. at p. 3, 651 So.2d at 1337 [emphasis added]. Thus, the Supreme Court found any uniformity requirements of La. Const. art. VI, § 29 were inapplicable, as the legislature was not enacting exemptions or exclusions.
We disagree, as noted above, with the appellee and find that the statute at issue is not a "suspension" of the hotel occupancy taxes, but instead is an "exemption or exclusion" within the meaning of § 29(D). First, there does not seem to be a time limit on the Taxing District. La. R.S. 33:9038.21(H) provides as follows:
H. Term. The district shall dissolve and cease to exist one year after the earlier of the date all bonds, notes, and other evidences of indebtedness of the district, including refunding bonds are paid in full as to both principal and interest, or a termination of the lease between the World Trade Center and WTC Development, LTD.; however, under no event shall the district have an existence of less than three years.[10]
*1194 Second, we look to the case of Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971), wherein the Supreme Court considered La. Const. (1921) art. XIV, § 47, the constitutional provision creating the LSED and imposing the LSED (Superdome) taxes making up 4% of the present total 13% hotel occupancy taxes. As part of the constitutional provision, the LSED, like the Taxing District, was authorized to impose a tax that would be collected "in lieu" of pre-existing taxes. The constitutional provision expressly stated that it was intended to "exempt" hotel rentals and fees from pre-existing sales taxes. Similarly, the WTC TIF statute states that the tax collected "shall be deemed to supersede and be in lieu of any other tax on hotel occupancy within the district[.]" We find the statute at issue creates an open-ended exemption from the present hotel occupancy taxes and is not uniform; it therefore further violates La. Const. art. VI, § 29(D).
Next, the appellants assert that, should we find that the WTC TIF statute does not create an unconstitutional exemption to the hotel occupancy taxes, the WTC TIF statute is unconstitutional under La. Const. art. VII, § 14(A), insofar as it provides for an unconstitutional donation of public funds by the Tax Recipients. The appellee argues that the use of public funds contemplated by the WTC TIF statute is authorized by § 14(B), which enumerates the exceptions to the prohibitions of § 14(A), as it involves the use of public funds for "social welfare programs" and further involves the use of public funds to issue bonds to fulfill the legal obligations of the Taxing District. We disagree.
Art. VII, § 14, entitled "Donation, Loan, or Pledge of Public Credit", states in pertinent part:
(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Except as otherwise provided in this Section, neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
(B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy; (2) contributions of public funds to pension and insurance programs for the benefit of public employees; (3) the pledge of public funds, credit, property, or things of value for public purposes with respect to the issuance of bonds or other evidences of indebtedness to meet public obligations as provided by law;....
* * *
(D) Prior Obligations. Funds, credit, property, or things of value of the state or of a political subdivision heretofore loaned, pledged, dedicated, or granted by prior state law or authorized to be loaned, pledged, dedicated, or granted by the prior laws and constitution of this state shall so remain for the full term as provided by the prior laws and constitution and for the full term as provided by any contract, unless the authorization is *1195 revoked by law enacted by two-thirds of the elected members of each house of the legislature prior to the vesting of any contractual rights pursuant to this Section.[11] [Emphasis supplied.]
The appellants argue that even if the patrons of the WTC hotel are to pay the hotel occupancy tax imposed by the WTC TIF statute once the hotel is operating, the WTC TIF statute requires that the money derived by virtue of the statute effectively be transferred to the developer of the hotel by the Tax Recipients. The appellants assert that the Tax Recipients are legally entitled to the money. The appellants further contend that this is clearly a prohibited use of public funds pursuant to La. Const. art. VII, § 14(A), especially in light of the Louisiana Supreme Court's interpretation of art. VII, § 14 in City of Port Allen v. Louisiana Municipal Risk Management Agency, 439 So.2d 399, 401 (La.1983).
In City of Port Allen, the Court held that a statute that imposed solidary liability among an association of political subdivisions in a risk management pool was unconstitutional under La. Const. art. VII, § 14(A). The association created by La. R.S. 33:1349(C) was one of the municipalities that wished to reduce losses suffered through workers' compensation claims and tort liability. The Court noted that prior jurisprudence had held that any transfer or pledge of anything of value by a political subdivision was found to violate § 14(A) if the political subdivision "is not under any legal obligation to do so." Id. at 401. Thus, the statute was found to violate § 14(A) insofar as no member of the association could be constitutionally compelled to pay any claim based on the tort or workers' compensation liability incurred by any other association member absent the statute in question. In a footnote to the opinion, the court noted that
[t]he legislature, by operation of law, has made each member pledge, in effect, its assets for the debts of another. Such a pledge is prohibited by Art. VII, § 14(A).
Id. at 402 n. 5.
Likewise, the appellants contend that the WTC TIF statute forces the Tax Recipients to donate the tax proceeds from the hotel occupancy tax that they would otherwise be entitled to as a matter of law to the developer to cover the costs associated with the operation of the WTC hotel. Such a pledge would in no way fulfill any constitutional or legal duty of the Tax Recipients,[12] rendering the WTC TIF statute unconstitutional. We find that the appellants are correct; the WTC TIF statute does not survive the prohibition set forth in La. Const. art. VII, § 14(A).[13]
*1196 The appellee contends, however, that the WTC TIF statute fulfills two exceptions to the prohibited uses of public funds, because it involves the use of public funds for "social welfare programs," which is allowed by § 14(B)(1), and further involves the use of public funds to issue bonds for public obligations, as contemplated by § 14(B)(3). The appellee maintains that, because the WTC hotel project would create hundreds of jobs in the service and construction industry, many of which would go to low-income residents of the city of New Orleans, the WTC TIF statute provides for the use of public funds for social welfare. The appellee further cites La. R.S. 33:9021, which provides that the "Cooperative Economic Development Law" authorizes cooperative endeavors between political subdivisions and private associations, corporations, or individuals to reduce unemployment, underemployment or other forms of economic distress. La. R.S. 33:9021(6). The statute further notes that these stated goals are "in the public interest." Id.
The appellee relies on Council of the City of New Orleans v. All Taxpayers, 03-0189 (La.App. 4 Cir. 2/24/03), 841 So.2d 72, writ denied, 03-0626 (La.4/4/03), 840 So.2d 1221, in which this court found that funds pledged to build low-income housing as part of an economic development project constituted a "social welfare program" under La. Const. art. VII, § 14(B)(1). We find, however, that the holding on this issue in Council of the City of New Orleans is clearly distinguishable. The building and operation of a "for-profit" hotel is not on a par with the development of low-income housing for the citizens of New Orleans and does not meet the exception. Special provisions for low-income citizens are clearly a form of social welfare program. Providing temporary construction jobs that tend to be somewhat higher paying and longer-term low wage jobs in the hotel industry is not a "social welfare program" envisioned by § 14(B)(1). Although we noted that we had found "no authority to suggest that the constitutional requirement of a public purpose for public funds necessarily excludes any co-existing benefit to private parties,"[14] we do not find that the designated use of the tax revenue funds in the case sub judice complies with the social welfare requirement, even in part. "Verily, if the law so decided, it would have to strain at a gnat after swallowing a camel." State v. Carter, 107 La. 792, 793, 32 So. 183, 184 (1902).
While we agree that creation of jobs and economic development may be in the "public interest" under La. R.S. 33:9021 and a desirable and social good, we do not find that this type of development constitutes a "social welfare program for the aid and support of the needy" as contemplated by § 14(B)(1). Under the rationale espoused by the appellee, almost any economic development project could be found to meet the exception in § 14(B)(1) and the exception would quickly subsume the rule, essentially invalidating the prohibitions put forth in § 14(A). Thus, although we recognize the social benefit in creating employment opportunities, especially *1197 for those who might lack opportunity in the economic sector, to find that the WTC TIF statute satisfies this particular exception to the constitutional ban on donation of public funds would render La. Const. art. VII, § 14 essentially meaningless.[15]
With regard to the argument that the WTC TIF statute falls under the exception set forth in § 14(B)(3) because it authorizes the Taxing District to issue bonds for the purpose of financing the WTC hotel project, which is a "public obligation," we disagree. Although the trial court found that the Taxing District had a legal obligation to pledge the tax increment revenues to the WTC hotel project, we find that the tax increment revenues in actuality belong to the Tax Recipients as a matter of law.[16] Therefore, because no Tax Recipient would be fulfilling any "public obligation" through the issuance of the bonds in this matter, we find that the WTC TIF statute does not satisfy the exception in § 14(B)(3).[17]
Since we have found La. R.S. 33:9038.21 unconstitutional, we pretermit discussion of any other assignments of error raised by the appellants. Based on the foregoing, we reverse the judgment of the trial court.
REVERSED.
BELSOME, J., concurs in result.
NOTES
[1] Because this appeal is taken pursuant to the Bond Validation Act, La. R.S. 13:5121 et seq., it has been assigned expedited status. See La. R.S. 13:5128.
[2] WTC Development, LP, as an intervenor in this case, is also an appellee by virtue of its alignment in these proceedings with the Taxing District. We herein use "appellee" to refer to them both individually and jointly.
[3] "TIF" stands for tax increment financing.
[4] For a full discussion of the legislative history of the statutes underlying this litigation, and of the proceedings prior to the remand, see World Trade Center Taxing District v. All Taxpayers, 04-1365 (La.App. 4 Cir. 9/1/04), 883 So.2d 459. See also, World Trade Center Taxing District v. All Taxpayers, 04-0572 (La.App. 4 Cir. 5/19/04), 875 So.2d 850.
[5] See La. C.C. art. 13
[6] La. R.S. 33:9038.21 was enacted by Acts 2002, 1st Ex.Sess., No. 47. See, La. Const. art. VI, § 29(D).
[7] See La. Const. (1921) art. XIV, § 47, as amended and continued by statute by La. Const. (1974) art. XIV, § 16, as amended by Acts 1995, No. 1191.
[8] The parties do not dispute the hotel occupancy taxes and their allocations. We refer to these entities entitled to receipt of some portion of the occupancy taxes collectively as "Tax Recipients."
[9] If the statute did indeed suspend the tax, it would have to comply with La. Const. art. III, § 20, which argument we have already discussed above.
[10] While the lease to WTC Development, LP is for a term of ninety-nine years, the Taxing District's by-laws limit the term of the district's existence to cease "one year after the earlier of the thirtieth (30th) anniversary of the first date that Hotel Rooms, as defined in the [WTC TIF statute] are occupied for rent or fee, or a termination of the [L]ease ...; however, in no event shall the District have an existence of less than three years." The trial court would not speculate regarding whether the term of the Taxing District would be increased in the future. We find a significant discrepancy between the statute and the by-laws. Additionally, we find that a refinancing of any bonds could effectively extend the term of the Taxing District indefinitely, but not beyond a total of ninety-nine years.
[11] One could argue that La. R.S. 33:9038.21 is a valid exercise by the legislature of the right to reallocate tax revenues pursuant to § 14(D); however, the reallocation must comply with § 14(A) for the reasons assigned herein.
[12] The appellants assert, and we agree, that the constitutional and legal duties of the OPSB, RTA, Superdome, and the Convention Center do not encompass funding a hotel project.
[13] The appellants assert in a related argument that the language in La. R.S. 33:2714 further prohibits the transfer of the hotel occupancy taxes to the Taxing District. La. R.S. 33:2714 provides that "[t]he ordinance imposing said tax, and any amendments thereto, shall specify the purpose or purposes for which said tax is imposed. The revenues derived from said tax shall be dedicated and used solely for said purposes." La. R.S. 33:2714. Insofar as we have recognized that the hotel occupancy taxes have been dedicated for specific purposes, e.g., to fund the Tax Recipients so that they might fulfill their specific duties, including furthering education, providing for public transportation, etc., we agree that the WTC TIF statute conflicts with and violates this statute. Although the appellee asserts that our holding in Council of City of New Orleans v. All Taxpayers, 03-0189 (La.App. 4 Cir. 2/24/03), 841 So.2d 72, does not support this position, we note that the taxes sought to be used by the economic development project in that case were city sales taxes that had only been designated for "general municipal purposes." We found that the use of the tax revenue contemplated by the project was consistent with the purpose stated by the tax ordinance in question.
[14] Id. at pp. 12-13, 841 So.2d at 80.
[15] We note that on four occasions the legislature has presented to the electors proposed constitutional amendments to the state constitution to permit economic development and/or industrial enterprise inducement, which if adopted might have permitted the WTC hotel project as envisioned by La. R.S. 33:9038.21. However, the electors rejected each and every proposal on the subject. We conclude, accordingly, that the electors do not wish to alter or modify the restrictions and limitations set forth in La. Const. art. VII, § 14.
[16] As we have noted, the argument of the appellee is based on the premise that because the Taxing District, and consequently the WTC hotel, have never collected occupancy taxes from any patrons, the revenues from the tax increase will actually constitute a new tax, and therefore were never due to the Tax Recipients. We rejected this argument above.
[17] We take notice of the First Circuit Court of Appeal's opinion in Denham Springs Economic Development District v. All Taxpayers, 04-1013 (La.App. 1 Cir. 6/4/04), 885 So.2d 1153, writ granted, 04-1674 (La.9/24/04), 882 So.2d 1129, and the similarities between it and this case sub judice. We further note that the Supreme Court heard arguments on 24 November 2004 and that an opinion has not yet issued. It is possible that the opinion therein could have an impact on the matter decided herein.