WHIPPLE, J.
|sThis matter arises from a suit brought by the Louisiana Local Government Environmental Facilities and Community De *1196 velopment Authority (the LCDA), to establish the validity and legality of the issuance of Series 2010 Bonds for the benefit of the City of St. Gabriel pursuant to the Bond Validation Act, La.Rev.Stat. Ann. §§ 13:5121, et seq. The appeals from the trial court’s denial of the motion for judgment are being given expedited consideration in accordance with La.Rev.Stat. Ann. § 13:5128. For the reasons that follow, we reverse the trial court’s denial of the motion for judgment, render judgment declaring the Series 2010 Bonds valid, and remand this matter to the trial court for disposition, as may be appropriate, of the pending “Reconventional Demand and/or Third-Party Demand and/or Cross-Claim” and any other unresolved matters.

The Senes 2010 Bonds

The LCDA seeks to issue $14,500,000.00 in revenue bonds on behalf of the City of St. Gabriel (the City). The Series 2010 Bonds are to be used to fund various infrastructure projects, including sewage, wastewater, and highway improvements.
This financing endeavor began on May 20, 2010, when the City passed Resolution No.2010-0001-0520, requesting the LCDA issue revenue bonds in an amount not to exceed $14,500,000.00. An application was filed with the LCDA, and on June 10, 2010, the LCDA adopted a resolution granting preliminary approval to the issuance of the Series 2010 Bonds.
The State Bond Commission asked the LCDA and the City to adopt amending resolutions clarifying the security for the Series 2010 Bonds and |4to include certain bond covenants and language. In response, the LCDA adopted an Amending Resolution on July 8, 2010. The Amending Resolution specified that the LCDA would fund a loan to the City through proceeds obtained from the issuance of the Series 2010 Bonds and that the City would service its obligation under the loan agreement by a pledge of the “lawfully available funds” of the City, including a 1% sales and use tax imposed and levied by the City.
The City also adopted Resolution 2010-0002-0916, establishing that any debt obligation of the City related to the issuance of the Series 2010 Bonds would be repayable from and secured by the 1% sales and use tax earlier approved by the voters and collected in the City. If the taxes collected were insufficient to meet the payments, the City would utilize all sources of lawfully available funds to satisfy the obligations resulting from the Series 2010 Bonds. Without revenue generated by the 1% sales and use tax, the City will be unable to pay back the bond obligation.

The City’s 1% Sales and, Use Tax

For a complete understanding of the legal issues herein, the history of the City’s 1% sales and use tax must be explored. On April 18, 1996, the City passed a resolution requesting a special election to authorize implementation of the 1% sales and use tax. The voters approved the tax, and thereafter, on August 1, 1996, the City enacted Ordinance # 1996-10, imposing a 1% sales and use tax within the incorporated limits of the City, from and after October 1,1996.
A group of corporate taxpayers within the city, including predecessors to the seven taxpayers herein, filed suit, disputing the validity of the 1% Usales and use tax. The dispute reached this court in the matter of Ciba-Geigy Corp. v. Town of St. Gabriel ex rel. Grace, 98-0935 (La.App. 1 Cir. 4/1/99); 740 So.2d 147, writ granted, 99-1223 (La.5/28/99); 743 So.2d 676 (application for cert. dismissed by the parties on October 13, 1999) (St. Gabriel I). In St. Gabriel I, this court declared the tax “unlawful,” because the 1% sales and use tax when added to the aggregate rate of sales tax within the municipality exceeded the then-applicable 4% aggregate maximum *1197 for sales and use taxes set by La.Rev.Stat. Ann. § 33:2721.6. St. Gabriel I, 740 So.2d at 150. The City successfully applied to the Louisiana Supreme Court for writs of certiorari and review; however, in 1999, the City and the corporate taxpayers entered into a settlement agreement, and as part of that agreement, the City voluntarily dismissed its action pending in the Louisiana Supreme Court. The City agreed to suspend the levy and collection of 2/3 of the 1% sales and use tax with respect to the corporate taxpayers for ten years (October 1999-October 2009). The compromise was memorialized on November 18, 1999, in Ordinance # 1999-3, which provided that the City would roll back the 1% tax to a 1/3% tax within the incorporated limits.
Approximately three months after this court’s decision in St Gabriel I, and prior to the compromise agreement, the Louisiana Legislature amended La.Rev.Stat. Ann. § 33:2721.6 to increase the maximum aggregate sales tax rate from 4% to 5%. See 1999 La. Acts No. 679 (eff.07/1/99).
On November 15, 2007, the City .passed Ordinance # 2007-0001-1115. Ordinance # 2007-0001-1115 rescinded Ordinance # 1999-3 and ratified all [¿provisions of earlier Ordinance # 1996-10 (imposing the 1% sales and use tax). In response, the Parish of Iberville Sales Tax Department (the Collector) sued the City, seeking in-junctive relief precluding collection of the full 1% sales and use tax. The Collector maintained that, because in 2006 the Parish of Iberville passed an additional 1% sales tax to be implemented in 1/3% increments over three years, the City’s 1% sales and use tax again caused the aggregate tax levy to exceed the 5% statutory aggregate maximum found in R.S. 33:2721.6. The Collector was successful at the trial court, and the City appealed.
Sitting en banc, this court expressly overruled its prior decision in St Gabriel I. Parish of Iberville Sales Tax Department v. City of St. Gabriel, 08-1780 (La. App. 1 Cir. 7/22/09); 21 So.3d 955, 961 (St. Gabriel II). In reversing the trial court judgment in favor of the Collector, the majority concluded that, “pursuant to LSA-R.S. 33:2711, incorporated municipalities are authorized to levy and collect sales and use taxes not in excess of 2 1/2% upon satisfying the procedural requirements of that statute, without reference to the limitations imposed on parishes and school boards by LSA-R.S. 33:2721.6(A)(2).”[1] St. Gabriel II, 21 So.3d at 961. Thus, the City was not limited by the statutory maximum set forth in La. Rev.Stat. Ann. § 33:2721.6.
However, the litigation over the City’s 1% sales and use tax did not end with this court’s decision in St. Gabriel II. On December 11, 2009, the |7City filed suit against the Collector, seeking injunctive relief directing the Collector to collect the full 1% sales and use tax (City of St. Gabriel v. Iberville Parish Sales Tax Department, 68,512-A, Eighteenth Judicial District Court, Parish of Iberville). Six taxpayers intervened, challenging the legality of the tax in light of the City’s 1% sales and use tax causing the aggregate sales and use tax to exceed La.Rev.Stat. Ann.' § 33:2721.6(A)(2)’s aggregate maximum, now set at 5%. Additional litigation has also been filed in the Eighteenth Judicial District Court, Parish of Iberville, between March and May of 2010, by individ *1198 ual corporate taxpayers. The corporate taxpayers have paid taxes under protest and filed suits seeking refunds. The corporate taxpayers allege the City’s 1% sales and use tax is illegal as written, as it exceeds the 5% limitation on aggregate taxes imposed by La.Rev.Stat. Ann. § 33:2721.6.

PROCEDURAL HISTORY

Turning again to the present litigation, the City, by Resolution # 2010-0002-0916, authorized the filing of the present suit in accordance with the Bond Validation Act. On October 20, 2010, the LCDA filed the Motion for Judgment in the Nineteenth Judicial District Court. The LCDA sought a judgment declaring:
1. The Series 2010 Bonds to be valid and legal;
2. The means provided for the payment and security of the Series 2010 Bonds to be valid and legal;
3. The pledges of revenues securing the Series 2010 Bonds to be valid and legal;
|84. All covenants and provisions of the resolutions and ordinances associated with the issuance of the Series 2010 Bonds to be valid and legal;
5. The Collector must remit the tax to the City to ensure the City can satisfy its obligations under the loan agreement with the LCDA, as well as to ensure the pledge of revenues under the Series 2010 Bonds will be available as security to the bondholders;[2] and
6. That all of the proceedings and matters upon which the validity and legality of the foregoing is based are valid and legal.
Lastly, the LCDA sought a permanent injunction to prevent any person from instituting any action or proceeding contesting the validity of the Series 2010 Bonds, the security for the Series 2010 Bonds, the validity and collection of the Tax, and the validity of the resolutions or ordinances, or any other proceedings or matters.
Notice of the hearing on the Motion for Judgment was published in the newspapers, and a certified copy of the Motion for Judgment was provided to the State Bond Commission and the Louisiana Attorney General. On November 15, 2010, seven taxpayers responded to the Motion for Judgment, to wit: PCS Nitrogen Fertilizer, LP; Williams Olefins, L.L.C; Cos-Mar Company; Total Petrochemicals USA, Inc.; Syngenta Crop Protection, Inc.; In-eos Fluor Americas, LLC; and Taminco Higher Amines, Inc. (collectively referred to as the Taxpayers). The Taxpayers filed 1 flnumerous pleadings, including peremptory exceptions objecting to nonjoinder and res judicata, a motion to consolidate, and a “Reconventional Demand and/or Third-Party Demand and/or Cross-Claim.” Broadly stated, the Taxpayers object to the Series 2010 Bonds on the basis that the City’s 1% sales and use tax proposed as the means of payment and security for the bonds “is illegal, both as written and as applied to them.” The Taxpayers named the LCDA, the City, and the Collector as defendants in their third-party demands.
On December 16, 2010, the trial court heard arguments concerning the exceptions and motions. At the hearing, the trial court:
1. Denied the Taxpayers’ motion to consolidate;
2. Denied the Taxpayers’ peremptory exception raising the objection of res judicata;
*1199 3. Sustained the Taxpayers’ peremptory exception of nonjoinder as to the City and ordered the City joined as a party plaintiff.
4. Denied the Taxpayers’ peremptory exception of nonjoinder as to the Collector.
At the trial of the Motion for Judgment, the LCDA and the Taxpayers submitted a joint stipulation and introduced numerous documents into evidence. The LCDA also presented testimony from several witnesses. At the conclusion of the hearing, the trial court denied the LCDA’s Motion for Judgment. The trial court explained that the validity of the City’s 1% sales and use tax has been the source of litigation since 1996. The trial court concluded that St. Gabriel I and II are valid yet “conflicting decisions.” The hncourt reasoned that the two First Circuit decisions and the pending lawsuits in Iberville Parish, do not “afford the stability and reliability that the financial market is really looking for, and I would be doing everyone a disservice to validate this bond issue at this time.”
A written judgment was signed on December 22, 2010. The judgment memorialized the trial court’s interlocutory rulings and denied the LCDA’s Motion for Judgment, entering judgment on the Motion for Judgment in favor of the Taxpayers. The judgment denying the Motion for Judgment was expressly designated by the trial court as final and immediately appealable under La.Code Civ. Proc. Ann. art. 1915(B).

THE INSTANT APPEALS

Despite the trial court’s denial of the LCDA’s “Motion for Judgment,” the Taxpayers filed an appeal with this court, asserting three assignments of error, and eight legal issues for consideration. The assignments of error are:
1. The trial court erred in denying the Taxpayers’ peremptory exception of res judicata and not declaring the St. Gabriel 1% sales and use tax non-collectible from the Taxpayers.
2. The trial court erred in denying the Taxpayers’ peremptory exception of nonjoinder, in part, as to the joinder of the Tax Collector, not declaring the back taxes non-collectible from Taxpayers, and not ordering the Collector to refund the Taxpayers the amount of tax paid under protest since January 2010, plus accrued interest.
| n3. The trial court erred in failing to either (a) recognize that St. Gabriel II is neither binding nor controlling; or (b) address the question of the illegality of the 1% sales and use tax on its merits; or (c) declare the 1% sales and use tax illegal; or (d) order a refund to the Taxpayers of all tax paid under protest, plus accrued statutory interest.
The LCDA also appealed, asserting the following three issues for review:
1. Did the trial court err in denying the Motion for Judgment and invalidating the proposed issuance of the Series 2010 Bonds, as there were no substantial defects or material errors and omissions in the issue?
2. Did the trial court err in concluding that St. Gabriel I and St. Gabriel II are conflicting final judgments, potentially restricting the tax base to be used by the City as payment and security for the Series 2010 Bonds?
3. Did the trial court commit manifest error in failing to certify the denial of the Taxpayers’ peremptory exceptions of res judicata and nonjoinder, and their motion to consolidate, as final and immediately appealable?
The City also obtained an order for appeal; however, no brief was filed with this *1200 court. Assignments of error that are not briefed are deemed |]2abandoned under Rule 2-12.4 of the Uniform Rules of Courts of Appeal. Accordingly, the City’s appeal is deemed abandoned.[3]

DISCUSSION

Appellate Jurisdiction

As a preliminary matter, this court must first determine which issues are properly before us. The LCDA correctly points out that the trial court certified only the denial of its primary demand, i.e., the Motion for Judgment, as immediately ap-pealable under La.Code Civ. Proc. art. 1915(B).
On review, we find no error in the trial court’s designation, as the denial of the Motion for Judgment clearly decides the merits of the primary action. Moreover, the expeditious treatment afforded to actions brought pursuant to the Bond Validation Act supports the need for immediate review.[4] La.Code Civ. Proc. Ann. art. 1915; R.J. Messinger, Inc. v. Rosenblum, 04-1664 (La.3/2/05); 894 So.2d 1113, 1122.
The LCDA maintains the Taxpayers have no right to appeal the denial of their exception raising the objection of res judi-cata, as the trial court’s ruling was interlocutory, and La.Rev.Stat. Ann. § 13:5128 only allows for an appeal to the court of appeal, or the Louisiana Supreme Court, where |iapermitted by the constitution, “from a final judgment.”[5] Lastly, the LCDA observes that the trial court did not designate the denial of the Taxpayers’ exception of res judicata as a final judgment for the purpose of an immediate appeal under La.Code Civ. Proc. Ann. art. 1915.
The denial of the exception objecting to res judicata is interlocutory. Tolis v. Board of Supervisors of LSU, 95-1529 (La.10/16/95); 660 So.2d 1206, 1207 (per curiam). A party may appeal from an interlocutory judgment only when expressly provided by law. La.Code Civ. Proc. Ann. art. 2083. Moreover, La.Code Civ. Proc. Ann. art. 1915 does not authorize a trial court to designate a judgment denying an exception as final. Young v. City of Plaquemine, 04-2305 (La.App. 1 Cir. 11/4/05); 927 So.2d 408, 411.
Although interlocutory judgments are generally not appealable, when an unrestricted appeal is taken from a final judgment, an appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him in addition to the review of the final judgment. Judson v. Davis, 04-1699 (La.App. 1 Cir. 6/29/05); *1201 916 So.2d 1106, 1112, writ denied, 05-1998 (La.2/10/06); 924 So.2d 167. In this instance, the denial of the Taxpayers’ peremptory exception raising the objection of res judicata was made in the course of deciding the primary demand, and the correctness of the trial court’s denial of the Motion for Judgment cannot be reviewed without 1 ^consideration of the objections raised thereto. Accordingly, the issue is properly before this court.[6]

Res Judicata

The Taxpayers argue that their peremptory exception raising the objection of res judicata was improperly denied, given the finality of the St. Gabriel I decision and the settlement agreement entered into between the City and the Taxpayers.
The litigation in St. Gabriel I ended when the City and the Taxpayers entered into a settlement agreement (a compromise). A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. Civ.Code Ann. art. 3071. A compromise precludes the parties from bringing a subsequent action based upon the matter that- was compromised. La. Civ.Code Ann. art. 3080. Thus, a valid compromise may form the basis of a plea of res judicata. Leray v. Nissan Motor Corp, in U.S.A., 05-2051 (La.App. 1 Cir. 11/3/06); 950 So.2d 707, 710.
 The burden of proving the facts essential to sustaining the objection of res judicata is on the party pleading the objection. Union Planters Bank v. Commercial Capital Holding Corp., 04-0871 (La.App. 1 Cir. 3/24/05); 907 So.2d 129, 130. If any doubt exists as to its application, the exception must be overruled and the second lawsuit maintained. Denkmann Associates v. IP Timberlands Operating Co., 96-2209 (La.App. 1 Cir. 2/20/98); 710 So.2d 1091, 1096, writ denied, 98-1398 (La.7/2/98), 724 So.2d 738. When an objection of res judicata is raised before the case is submitted, and evidence is received on the objection, the standard of review on appeal is manifest error. Leray, 950 So.2d at 710.
The settlement agreement herein was entered in October 1999 for the purpose of putting an end to the litigation then pending before the Louisiana Supreme Court between the Town of St. Gabriel and ten named taxpayers (St. Gabriel I). The parties stipulated that the seven Taxpayers in this proceeding are successor corporations to original plaintiffs in St. Gabriel I and original parties to the settlement agreement.
Nonetheless, the compromise agreement entered into between the City and the Taxpayers is not binding on the LCDA because the LCDA, although sharing a common interest with the City, was not a party to the settlement agreement.[7] A compromise entered into by one of multi- *1202 pie persons with an interest in the same matter does not bind the others, nor can it be raised by them as a defense, unless the matter compromised is a solidary obligation. La. Civ.Code Ann. art. 3075.
Furthermore, we agree with the trial court that, although the LCDA’s Motion for Judgment necessarily involves the validity of the City’s 1% sales and use tax, this bond validation action is “a completely different claim.” |mBond validation proceedings are of an expedited nature and limited scope.[8] Council of City of New Orleans v. All Taxpayers, Property Owners, 08-0189 (La.App. 4 Cir. 2/24/03); 841 So.2d 72, 77, unit denied, 03-0626 (La.4/4/03); 840 So.2d 1221. The purpose of the Bond Validation Act is to “provide a uniform, expeditious and equitable procedure with due regard for the public fisc and rights of persons in interest for the judicial determination of the validity of bonds and related proceedings where material and substantial questions with regard thereto are involved or a judicial determination of issues relating to bonds is necessary to insure the marketability of bonds in investment channels.” La.Rev. Stat. Ann. § 13:5122. The Bond Validation Act provides for a decree validating or invalidating the bonds and expressly sets forth the legal effects, or relief, resulting from a final judgment validating the bonds in La.Rev.Stat. Ann. § 13:5129, which provides:
In the event the decree of the court validates the bonds or validates the action taken to provide a new or different source of payment for the bonds, and no appeal is taken within the time above prescribed, or if appeal is taken and the decree of the court is affirmed, such decree shall be forever binding and con-elusive as to the validity of the bonds, the validity of the tax, any lease or other means provided for the payment of such bonds and the validity of all pledges of revenues and of all covenants and provisions contained in the instrument or proceedings authorizing or providing for the issuance of such bonds, and as to all matters adjudicated and as to all objections presented or which might have been presented in such proceeding, and shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the bonds or any other matter adjudicated or which might have been called in question in such proceedings.
| i7For the above-stated reasons, we find no manifest error in the trial court’s overruling of the peremptory exception raising the objection of res judicata.

Motion for Judgment under the Bond Validation Act

Although numerous procedural issues have been raised, the relevant facts are not disputed. Therefore, the doctrine of manifest error does not apply to this court’s review of the trial court’s denial of the Motion for Judgment. See Cangelosi v. Allstate Insurance Co., 96-0159 (La. App. 1 Cir. 9/27/96); 680 So.2d 1358, 1360, writ denied, 96-2586 (La.12/13/96); 692 So.2d 375. Appellate review of questions of law is simply to determine whether the trial court was legally correct. Cangelosi, 680 So.2d at 1360.
The LCDA bears the burden of establishing the validity of the proposed bond issue. Council of City of New Orleans, 841 So.2d at 75. The Bond Validation Act is silent as to what evidence must be introduced by the governmental unit in order to meet its burden. Council of City of New *1203 Orleans, 841 So.2d at 75. However, the legislature instructs in La.Rev.Stat. Ann. § 18:5130:
No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it finds substantial defects, material errors and omissions in the incidents of such bond issue. Matters of form shall be disregarded. (Emphasis supplied.)
Accordingly, this court must decide whether the trial court erred in concluding, under the uncontested facts, that a substantial defect, material error, or omission exists such that the Series 2010 Bonds should be declared invalid.
11sThe LCDA first maintains that a challenge to the legality of a tax is not a substantial defect. The LCDA further argues that even if it were to be considered a substantial defect, the legality of the City’s 1% sales and use tax, the revenue stream which will support these bonds if validated, was resolved by this court in St. Gabriel II. The Taxpayers maintain that they are not bound by this court’s decision in St. Gabriel II, that this court’s decision in St. Gabriel II is an absolute nullity, and that the City’s 1% sales and use tax is illegal as the taxing scheme is ambiguous due to inherent conflicts between La.Rev.Stat. Ann. § 83:2711 and La.Rev.Stat. Ann. § 33:2721.6.
The Bond Validation Act specifically recognizes the right of a governmental unit proposing to issue bonds to bring an action to establish the validity of the bonds, as well as “the validity of the tax” provided for payment of such bonds. La.Rev.Stat. Ann. § 13:5123. As such, we agree, in part, with the Taxpayers in that the validity of a tax is a matter properly before a district court in deciding whether it should enter a judgment validating a proposed bond issue. However, we also agree with the LCDA that the legality of the tax levied by St. Gabriel Ordinance # 1996-10 was resolved by an en banc panel of this court in St. Gabriel II, and said judgment is final. St. Gabriel II, 21 So.3d at 961-62. There is no conflict between St. Gabriel I and St. Gabriel II because St. Gabriel II expressly overruled St. Gabriel I. As stated therein:
[P]ursuant to LSA-R.S. 33:2711, incorporated municipalities are authorized to levy and collect sales and use taxes not in excess of 2 1/2% upon satisfying the procedural requirements of that statute, without reference to the limitations imposed on parishes and school boards by LSA-R.S. 33:2721.6(A)(2), and we overrule this court’s earlier opinion to Imthe contrary as stated in [Si. Gabriel I ]. Therefore, we conclude that the district court erred in finding that St. Gabriel was not entitled to collection of the tax levied by Ordinance 1996-10 and in enjoining the city’s attempts to have the tax collected.
St. Gabriel II, 21 So.3d at 961. Whether the Taxpayers individually can prove their entitlement to a refund of taxes paid under protest in light of the earlier ruling in St. Gabriel I or under the terms of the 1999 settlement agreement does not affect the finality of this court’s decision in St. Gabriel II.
Other than the challenge to the legality of the City’s 1% sales and use tax, no specific challenges were raised to the issuance of the Series 2010 Bonds.[9] The *1204 LCDA is a governmental unit and political subdivision of the State of Louisiana. La. Rev.Stat. Ann. § 33:4548.4(A). The LCDA is authorized and empowered to issue and sell bonds on behalf of political subdivisions within the state, such as the City, for the projected costs of authorized projects. La.Rev.Stat. Ann. § 33:4548.6(A).
The City’s taxing authority is set forth in La.Rev.Stat. Ann. § 33:2711. The funds of a political subdivision may be pledged for a public purpose “with respect to the issuance of bonds or other evidences of indebtedness to meet public obligations as provided by law.” La. Const. Ann. art. VII, § 14(B)(3).
The record establishes that the LCDA authorized and adopted the June 10, 2010, LCDA Resolution and the July 8, 2010, LCDA Amending | ^Resolution to fund the City’s infrastructure projects by the issuance of the Series 2010 Bonds, to be secured and paid by the 1% sales and use tax revenues. The City authorized and adopted Resolution 2010-0001-0520 on May 20, 2010, and Resolution 2010-0002-0916 (which amended Resolution 2010-0001-0520) on September 16, 2010, authorizing the LCDA to proceed with the financing by issuing the Series 2010 Bonds, to be secured and repaid by the City’s 1% sales and use tax.
The City’s 1% sales and use tax was established by resolution of the City, approved by the voters, and memorialized in Ordinances 1996-10 and 2007-0001-1155. See St Gabriel II, 21 So.3d at 956, 961-62. This court, sitting en banc in St. Gabriel II recognized the validity of the 1% sales and use tax, and that judgment is final. See St Gabriel II, 21 So.3d at 961.
The LCDA properly noticed the hearing on the Motion for Judgment and properly provided a certified copy of the Motion for Judgment and notice of hearing to the State Bond Commission. See La.Rev.Stat. Ann. § 13:5124. At the hearing, the LCDA offered testimony regarding the general purpose of the Series 2010 Bond issue to fund infrastructure projects and further explained that the funds generated by the bond sale will be used to match funds procured from other sources.
The legislature cautions its intent is not “to require or to encourage the validation of all bonds by the judiciary.” La.Rev. Stat. Ann. 13:5122. However, we find in this instance the trial court erred in denying the LCDA’s Motion for Judgment. This court’s en banc final decision in St Gabriel II held that the City’s 1% sales and use tax is valid and collectible. 1⅞15⅛ Gabriel II, 21 So.3d at 961. As such, the 1% tax is valid security and a valid source of repayment of the Series 2010 Bonds.
The record reveals no substantial defect, material error, or omission in the Series 2010 Bond issue. To the contrary, the revenue stream offered to secure and pay the Series 2010 Bonds when issued is based on a currently valid and collectible tax, as per this court’s en banc and final decision in St Gabriel II.

CONCLUSION

For the foregoing reasons, we reverse the decision of the trial court denying the Motion for Judgment and enter judgment in favor of the Louisiana Local Government Environmental Facilities and Community Development Authority granting the Motion for Judgment and ordering, adjudging, and decreeing that the Series 2010 Bonds are legal and valid. We decline to grant the Louisiana Local Government Environmental Facilities and Community Development Authority relief beyond that set forth in the Bond Validation Act, La.Rev.Stat. Ann. § 13:5129. This matter is remanded to the trial court for disposition of the “Reconventional Demand and/or Third-Party Demand and/or *1205 Cross-Claim” and any other unresolved matters.
Costs of this appeal are assessed to PCS Nitrogen Fertilizer, LP; Williams Olefins, LLC; Cos-Mar Company; Total Petrochemicals USA, Inc.; Syngenta Crop Protection, Inc.; Ineos Fluor Americas, LLC; and Taminco Higher Amines, Inc.
REVERSED, RENDERED, AND REMANDED.
McDONALD, J. concurs and assigns reasons.

. Judge Michael McDonald was the sole dissent. In reasons. Judge McDonald explained that although he agreed with the majority’s analysis, he disagreed with the result. Judge McDonald opined that "it is the electorate who has the right to decide whether [the 1% sales and use] tax should be imposed.” St. Gabriel II, 21 So.3d at 963 (McDonald, J. dissenting).

. The request for a writ of mandamus against the Collector was "waived” at the hearing of this matter and is no longer at issue.

. The City timely filed a response brief in their capacity as appellee to the Taxpayers’ appeal.

. We are mindful that the denial of a motion for summary judgment cannot be designated as final for purposes of an immediate appeal under La.Code Civ. Proc. Ann. art. 1915(B). Young v. City of Plaquemine, 04-2305 (La. App. 1 Cir. 11/4/05); 927 So.2d 408, 411. The pleading to instigate judicial review under the Bond Validation Act is specifically referred to as a "Motion for Judgment.” La.Rev.Stat. Ann. § 13:5123. Unlike the denial of a motion for summary judgment, the denial of the LCDA’s motion for judgment disposed of the primary action.

.The LCDA also challenges the Taxpayers' right to seek appellate review of the denial of their peremptory exception objecting to non-joinder and the denial of their motion to consolidate. Although the issue of the nonjoinder of the Collector as a party plaintiff in the present litigation was assigned as error by the Taxpayers in their appeal herein, the issue was not briefed. A mere statement of an assignment of error in a brief does not constitute briefing of the assignment. State v. Williams, 632 So.2d 351, 353 (La.App. 1st Cir.1993); writ denied, 94-1009 (La.9/2/94), 643 So.2d 139. Thus, under Rule 2-12.4 of the Uniform Rules of Courts of Appeal, it is deemed abandoned. The denial of the Taxpayers' motion to consolidate was not assigned as error or briefed.

. In their appellate brief, the Taxpayers further seek entry of a judgment "declaring the St. Gabriel Tax illegal and ordering that the City and its Tax Collector refund to Taxpayers all taxes paid under protest, with accrued statutory interest.” Clearly, the issue of whether the Taxpayers are entitled to this requested relief goes beyond the scope of the proceedings in the Motion for Judgment and, thus, will not be considered as part of this appeal. So holding, the LCDA’s motion to strike the Taxpayers’ brief is denied as moot.

. The Taxpayers submit that the City is now a party to this bond validation proceeding, as the trial court granted in part the Taxpayers' peremptory exception objecting to the non-joinder of the City as a party plaintiff. The correctness of the trial court's ruling joining the City as a party plaintiff in this litigation has not been raised as part of this appeal. Regardless, the City’s position as party plaintiff does not change the fact that the LCDA was not a party to the prior settlement agreement.

. The Louisiana Supreme Court has set forth an excellent summary of the bond validation procedure in Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners and Citizens of Denham Springs Economic Development Dist., 05-2274 (La. 10/17/06); 945 So.2d 665, 676-77.

. In response to the LCDA’s Motion for Judgment, the Taxpayers filed declinatory exceptions raising the objections of insufficiency of service of process and lack of personal jurisdiction. By Joint Stipulation, filed into evidence, the Taxpayers withdrew these exceptions and agreed to relinquish "any claim of untimeliness of the publications of the LCDA’s Motion for Judgment.” The LCDA similarly waived the right to file any objections based on timeliness.