PETTIGREW, J.
|2This matter arises from a suit brought by the Louisiana Local Government Environmental Facilities and Community Development Authority (the LCDA), pursuant to the Bond Validation Act, La. R.S. 13:5121, et seq., to establish the validity, and 'legality of a proposed bond issuance and related contracts, prior to the marketing of the bonds. The appeal from the district court’s denial of the Motion for Judgment is being given expedited consideration in accordance with La. R.S. 13:5128. For the reasons that follow, we amend the judgment and, as amended, affirm.

FACTUAL AND STATUTORY BACKGROUND

The Louisiana Local Government Environmental Facilities and Community Development Act

The LCDA was created pursuant to the Louisiana Local Government Envirónmen- *233 tal Facilities and Community Development Authority Act (“the Community Development Act”), La. R.S. 33:4548.1 et seq., as a political subdivision of the State to be comprised of political subdivisions desiring to become members of the authority. La. R.S. 33:4548.4. Having found that “there exists a great and growing need in the state for economic development and the upgrade, rehabilitation, repairing, and construction of infrastructure and environmental facilities in the state to maintain a healthful and safe environment for the people of Louisiana,” the Legislature declared, in pertinent part, that the “purpose and intent of [the Community Development Act] is to provide an instrumentality with the authority to provide economic development, infrastructure, and environmental facilities ... and to assist in the financing of such needs to political subdivisions of this state.” La. R.S. 33:4548.2.
| .^Pursuant to the Community Development Act, the LCDA is vested with financial powers, including the power to issue bonds on behalf of or for the benefit of any participating political subdivision or organization to provide funds for economic development and other authorized projects. La. R.S. 33:4548.3(B)(2)(e), 33:4548.5(A)(9) & 33:4548.6(A); Louisiana Local Government Environmental Facilities and Community Development Authority v. All Taxpayers, 2011-0027 (La.App. 1st Cir.2/2/11), 56 So.3d 1194, 1204, writ denied, 2011-0467 (La.4/25/11), 62 So.3d 93.

The Sustainable Energy Financing Law

The Sustainable Energy Financing Law, La. R.S. 33:130.811, et seq., authorizes the governing authority, of a local governmental subdivision that is otherwise authorized to collect property taxes and to issue and sell bonds, to create a special district known as a “sustainable energy financing district,” whose purpose “shall be to encourage, accommodate, and provide a source of revenue and means for financing capital improvements for energy efficiency improvements” and “renewable energy improvements” for commercial or residential immovable property within the district. La. R.S. 33:130.811. The area of such a sustainable energy financing district shall consist of immovable property located within the local governmental subdivision whose owners agree to participate in the district. La. R.S. 33:130.811(B).
An owner of residential or commercial immovable property within the district may request financing in the form of a loan from the district to cover the costs of energy efficiency improvements or renewable energy improvements that the owner contracts to make to the immovable property. La. R.S. 33:130.812(B)(1). The amount of the loan “shall be assessed Lagainst the immovable property upon which the improvements are placed and shall be collected in the same manner as is provided for the ad valorem taxes assessed on the property by the local governmental subdivision creating the district.” La. R.S. 33:130.812(0(1). In order to carry out its purpose of providing financing to the owners of residential and commercial immovable property within the district, the local governmental subdivision and the sustainable energy financing district shall have the power to borrow money and to issue bonds or obligations. La. R.S. 33:130.813(A)(1) & (4).

The Property Assessed Clean Energy Special Assessment Revenue Bonds

In furtherance of its purpose under the Community Development Act, the LCDA is seeking to issue one or more series of Property Assessed Clean Energy Special Assessment Revenue Bonds (PACE bonds), not to exceed the total principal amount of one billion dollars. According to the documents of record, the PACE *234 bonds will be issued pursuant to a Master Trust Indenture to be executed by the LCDA, as issuer of the PACE bonds, and Deutsche Bank Trust Company Americas, as trustee, for the purpose of aiding sustainable energy financing districts in financing qualifying improvements under the Sustainable Energy Financing Law. The proposed PACE bonds would be secured by and paid pursuant to “Loan, Assignment, Security and Cooperative Endeavor Agreement[s]” (the Loan Agreements) executed by participating sustainable energy financing districts and the LCDA; and the participating districts would, in turn, satisfy the loan payments from special assessments on the property of participating owners within the districts, as authorized by “Financing, Assessments and Cooperative, Endeavor Agreement[s]” (the Financing Agreements) executed between those participating property owners and districts. Pursuant to the |5Loan Agreements, and as required by the Community Development Act, the PACE bonds are to be limited obligations of the LCDA, payable solely from payments received by the LCDA from the participating districts, without obligating the State to levy any taxes for their payment. La. R.S. 33:4548.6(L).

PROCEDURAL HISTORY

Turning to the present litigation, on September 29, 2014, the LCDA filed a Motion for Judgment in the Nineteenth Judicial District Court pursuant to the Bond Validation Act, La. R.S. 13:5121 et seq., seeking to establish, among other things, the validity of the PACE bonds, the proceedings taken in connection with the authorization of thé bonds, and the contracts and agreements providing for their security and method of financing.[1] According to the allegations of the motion, on September 11, 2014, eighteen days prior to the filing of its Motion for Judgment, the LCDA adopted a resolution authorizing the issuance of the PACE bonds, in one or more series, upon receipt of the appropriate approvals and authorization to proceed. In the Motion for Judgment, the LCDA detailed the security and financing method for the PACE bonds, as set forth above, and, as required by La. R.S. 13:5123, alleged that the bonds when issued will be valid and legal obligations of the LCDA.
Pursuant to the requirements of La. R.S. 13:5123, the LCDA named as defendants all taxpayers, property owners, citizens of the State of Louisiana, and nonresidents owning property or subject to taxation therein; | fland, in accordance with the requirements of La. R.S. 13:5124, sought an order directing the publication of the Motion for Judgment and of the time and place fixed for the hearing on the Motion, in The Advocate, as a daily newspaper published in the City of Baton Rouge, Louisiana, being the official journal of the LCDA. The LCDA prayed that, after due proceedings, the district court render judgment establishing and declaring: (1) The validity of the PACE bonds; (2) the validity of all proceedings taken in connection with the authorization of the PACE bonds; (3) the legality and validity of the Sustainable Energy Financing Law and its authorization of the creation of sustainable energy financing districts, the levy of assessments and the other transactions contemplated thereby; (4) the validity of the Indenture, the Loan Agree- *235 merits, the Financing Agreements and any other contracts or agreements providing for the payment of the PACE bonds; (5) the validity of the pledges of revenues and the covenants and provisions which constitute the contract between the LCDA and the holders of the bonds; (6) any other matters regarding the validity or approvals related to the bonds; and (7) any other matters or objections adjudicated or that might have been called into question in this proceeding. Lastly, the LCDA sought a permanent injunction to prevent any person from instituting any action or proceeding contesting the validity of the PACE bonds or any other matters outlined above for which it sought declarations of validity.
The Motion for Judgment and notice of the hearing thereon were duly published.[2] Additionally, as required by La. R.S. 13:5124(B), a certified copy of the Motion for Judgment was sent by certified mail to the State 17Bond Commission and the Louisiana Attorney General. No objections to the Motion for Judgment were filed.
On November 6, 2014, the scheduled date of the hearing, the LCDA submitted documentary evidence and presented argument in support of its Motion for Judgment. At the close of the hearing, the district court took the matter under advisement.
Thereafter, on November 17, 2014, the district court conducted another hearing on the Motion, and, as indicated by the record herein, the court expressed concerns at that hearing of the lack of due process regarding the method of notice to all defendants, a class which included all property owners of the State of Louisiana, by publication in The Advocate. Accordingly, the district court ruled orally that it was denying the Motion for Judgment to validate the PACE bonds pursuant to the statutory framework of the Bond Validation Act on the basis that the Bond Validation Act did not provide for proper notice to all property owners in the State of Louisiana, as defendants to this action.[3]
A judgment denying the LCDA’s Motion for Judgment was ultimately signed on January 7, 2015, and the LCDA has timely appealed from that judgment, contending that the district court erred in: (1) denying the LCDA’s Motion for Judgment seeking to validate municipal bonds and related agreements, documents and proceedings pursuant to the Bond Validation Act, when no challenge or opposition had been asserted; (2) denying the LCDA’s Motion for Judgment based on its belief that the service by publication provision of the Bond Validation Act was | ¡^unconstitutional when no challenge to the manner of notice or the constitutionality of the statute had been asserted; (3) ignoring controlling Louisiana Supreme Court precedent holding that the right to challenge the validity of municipal bonds is not a right to life, liberty or property protected by the Due Process Clause of the United States Constitution; and (4) ignoring controlling Louisiana Supreme Court precedent affirming the constitutionality of the service by publication provision of La. R.S. 13:5124.

DISCUSSION

The Bond Validation Act and its Service by Publication Provision (Assignments of Error Nos. 2, 3, and 4)

The purpose of the Bond Validation Act is to “provide a uniform, expeditious and *236 equitable procedure with due regard for the public fisc and rights of persons in interest for the judicial determination of the validity of bonds and related proceedings where material and substantial questions'with regard thereto are involved or a judicial determination of issues relating to bonds is necessary to insure [sic] the marketability of bonds in investment channels.” La. R.S. 13:5122. It provides the exclusive manner by which any type of suit, action or proceeding affecting the validity of bonds of any governmental unit can be properly asserted. La. R.S. 13:5122.
The governing body of any governmental unit proposing to issue bonds may bring at any time a proceeding in the district court, having original jurisdiction over the matter and in which the governmental unit is domiciled, to establish, among other things: the validity of such bonds; the validity of all proceedings taken in connection with the authorization or issuance of such bonds; the validity of the tax, any lease or other means provided for the payment of such bonds; and the validity of all pledges of ^revenues and of all covenants and provisions which constitute a part of the contract between such governmental unit and the holders of such bonds. La. R.S. 13:5123; Denham Springs Economic Development District v. All Taxpayers, Property Owners and Citizens of Denham Springs Economic Development Distnct 2005-2274 (La.10/17/06), 945 So.2d 665, 676.
The proceeding to establish the validity of bonds shall be brought by filing a motion for judgment, describing such bonds and the proceedings had relative to the issuance thereof, and alleging that such bonds when issued will be valid and legal obligations of the issuing governmental unit. In such a motion for judgment, “the taxpayers, property owners and citizens, of the issuing governmental units, including nonresidents owning property or subject to taxation therein, and all other persons interested in or affected in any way by the issuance of such bonds shall be made parties defendant.” La. R.S. 13:5123; Denham Springs Economic Development, 945 So.2d at 676.
All such parties “shall be served by publishing the motion for judgment in a newspaper in or having general circulation in such government unit.” La. R.S. 13:5124(A)(1). With regard to such publication, the Bond Validation Act provides that upon the filing of the motion for judgment, the district court shall-enter an order requiring the publication of the motion twice within a period of fifteen consecutive calendar days from the date of issuance of the order, specifying the dates for publication thereof, with the first publication to be not later than eight days from and after the date of issuance of the order. At the same time, the district court shall fix a time and place for hearing the proceeding, which time and place shall be published with the motion for judgment. The date fixed for the hearing shall [ inbe at least ten days, but not more than thirteen days, after the second publication of such motion for judgment. La. R.S. 13:5124(A)(1).
Moreover, the Bond Validation Act provides that by publication of the motion for judgment, all taxpayers, property owners, and citizens of such governmental unit including nonresidents owning property or subject to taxation therein “shall be considered as parties defendant in such proceedings and as having been duly served, and the court shall have jurisdiction of them the same as if each of them were named individually as a party defendant in such motion for judgment and personally served with process.” La. R.S. 13:5124(A)(2) (emphasis added).
*237 With regard to the district court’s concerns herein about notice to defendants by publication of the Motion for Judgment and the hearing thereon, we note that in Denham Springs Economic Development the Louisiana Supreme Court held that the right of individual defendants to challenge the provisions of a bond resolution made for the security and payment of bonds “does not bear the hallmarks of a constitutionally protected liberty or property interest” and, thus, does not invoke the protections of the Due Process Clause of the United States Constitution. Denham Springs Economic Development, 945 So.2d at 680-684.[4] As noted by the Court, “[i]t does not constitute a right associated with liberty, nor is the right exclusive to defendants in a property context.”
Rather, the Court held therein that the right accorded by the State to any person in interest to contest the legality of the bonds, the bond resolution, and the provisions made for the security and payment of the bonds is a “civil law right” granted to the public to challenge the actions of a state actor. Denham Springs Economic Development, 945 So.2d at 683. And, because there was no protected property interest in this civil law right the State accorded to interested persons, the State was free to limit or restrict the right to assert any such challenge without violating due process requirements. Denham Springs Economic Development District, 945 So.2d at 684.
Applying the Supreme Court’s rationale in Denham Springs Economic Development District to the matter before us, we likewise hold that because the named defendants herein, ie., the taxpayers and property owners of the State of Louisiana and all other persons interested in the issuance of the PACE bonds, do not have a protected property interest in 112challenging the validity of a resolution authorizing the issuance of bonds by a political subdivision, service of the Motion for Judgment, seeking validation of such bonds by publication in The Advocate (“a newspaper in or having general circulation in such government unit,” La. R.S. 13:5124(A)(1), and the official journal of the LCDA and the State of Louisiana, see La. R.S. 43:81 et seq.) does not raise any constitutional due process concerns. Because there is no protected property or liberty interest in the right to challenge the legality of the bonds, the Legislature (in creating the right, pursuant to the Bond Validation Act, to challenge bonds authorized and issued by political subdivisions) was free to limit or restrict the procedure for assertion of such a challenge, such as by providing for service by *238 publication, without implicating the Due Process Clause. See Denham Springs Economic Development, 945 So.2d at 680-684. Accordingly, we agree with the LCDA that the district court’s concerns regarding the service by publication, pursuant to La. R.S. 13:5124 of the Bond Validation Act, could not support a denial of its Motion for Judgment herein.[5] Nonetheless, because we conclude, for the reasons which follow, that the LCDA failed to fulfill its burden of proof in the district court below, we affirm the district court’s ruling to deny the Motion for Judgment, albeit on different grounds.

_jj$The LCDA’s Entitlement to Judgment under■ the Bond Validation Act (Assignment of Error No. 1)

In this assignment of error, the LCDA asserts that the district court’s denial of its Motion for Judgment constitutes legal error because, in the absence of a properly asserted challenge, there was no factual or legal basis on which to deny the Motion. Accordingly, it asks this court to render judgment on the record before us, granting its Motion for Judgment.
Pursuant to the Bond Validation Act, within seven days after the second publication of a motion for judgment, any party defendant may answer such motion. In the event no answers are filed by any person within the time prescribed, “the plaintiff may file a motion requesting the court to consider and pass upon questions certified therein in rendering its judgment.” La. R.S. 13:5126 (emphasis added).
The governmental unit, seeking judicial validation of the bonds it proposes to issue, bears the burden of establishing the validity of that proposed bond issue. Lou-isiana Local Government Environmental Facilities and Community Development Authority, 56 So.3d at 1202. While the Bond Validation Act is silent as to what evidence must be introduced by the governmental unit in order to meet its burden, the Act instructs as follows:
No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it finds substantial defects, material errors and omissions in the incidents of such bond issue. Matters of form shall be disregarded.
La. R.S. 13:5130; Louisiana Local Government Environmental Facilities and Community Development Authority, 56 So.3d at 1203.
Where the governmental unit carries its burden of proof and a judgment validating the bonds is rendered and becomes final, the final | ^judgment validating the bonds “shall be forever binding and conclusive” as to: (1) the validity of the bonds; (2) the validity of the tax, any lease or other means provided for the payment of such bonds; (3) the validity of all pledges of revenues and of all covenants and provisions contained in the instrument or proceedings authorizing or providing for the issuance of such bonds; and (4) all matters adjudicated and all objections presented or which might have been presented in such proceeding. Further, the final judgment validating the bonds “shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the bonds or any other matter adjudicated or which might have been called in question in such proceedings.” La. R.S. 13:5129; Louisiana Local Government Environ *239 mental Facilities and Community Development Authority, 56 So.3d at 1202.
Having concluded that the service by publication provision of the. Bond Validation Act do not raise any constitutional due process concerns and, thus, do not support the district court’s ruling, this court must determine whether the LCDA was entitled to the relief sought in its Motion for Judgment. Thus, because no answer was filed by any person following the publication of the LCDA’s Motion for Judgment, this court must “consider and pass upon” the merits of this action and decide whether, in light of the evidence submitted by the LCDA, it carried its burden of establishing its entitlement to judgment as prayed for.
At the November 6, 2014 hearing in the district court below, the LCDA introduced into evidence copies of the proposed Master Trust Indenture, Series Supplements, Financing Agreements, and Loan Agreements to establish the financing, security and repayment methods for |15the PACE bonds. This evidence would allow the court to “consider and pass upon” (1) the validity of the Indenture, the Loan Agreements, the Financing Agreements and any other contracts or agreements providing for the payment of the PACE bonds; and (2) the validity of the pledges of revenues and the covenants and provisions which constitute the contract between the LCDA and the holders of the bonds, as prayed for in the LCDA’s Motion for Judgment.
However, as set forth above, the LCDA also seeks a judicial determination of (1) the validity of the PACE bonds, and (2) the validity of all proceedings taken in connection with the authorization of the PACE bonds — relief to which it is entitled pursuant to La. R.S. 13:5123 — if it carries its burden of proof.[6] Pursuant to La. R.S. 33:4548.5(A)(9) and‘La. R.S. 33:4548.6(0, the LCDA is empowered to authorize the issuance of bonds by the adopting of a resolution. But, the LCDA did not introduce into evidence, or file in the record, the bond resolution allegedly authorizing the issuance of the PACE bonds or any evidence to show its proper passage. Cf. Council of City of New Orleans v. All Taxpayers, Property Oimers, 2003-0189 (La.App. 4th Cir.2/24/03), 841 So.2d 72, 75-76, writ denied, 2003-0626 (La.4/4/03), 840 So.2d 1221 (wherein in response to an argument that the governing body had failed to produce sufficient evidence to meet its burden of proof, by failing to introduce into evidence certain documents and 11fiagreements, the appellate court noted that the documents had been attached to the governing body’s memorandum filed into the record and, thus, were part of the record on appeal).
In the absence of such evidence, this court cannot “consider and pass upon” “the validity of all proceedings taken in connection with the authorization of the PACE bonds.” Moreover, in the absence of evidence to determine the validity of such proceedings, this court likewise cannot “consider and pass upon” the validity of the PACE bonds.
Additionally, with regard to the LCDA’s reliance on the Third Circuit Court of Appeal’s opinion in Sabine River Authority v. All Taxpayers, 2011-1139 (La.App. 3rd Cir. 10/5/11), 74 So.3d 278, 283-284, for the proposition that because it established its compliance with the notice provisions of the Bond Validation Act and because no *240 contest or opposition was filed to its Motion for Judgment, the district court was required to grant its Motion for Judgment without raising any objections thereto, we find such reliance to be misplaced. In Sabine River Authority, a political subdivision filed a motion for judgment seeking a judicial declaration as to the validity of bonds it sought to issue, and no interested party objected. Despite the lack of opposition, the district court denied the motion for judgment filed by a political subdivision based on concerns the court raised as to the funds to be used for security for the bonds. Sabine River Authority, 74 So.3d at 278.
In ultimately concluding that the district court was without authority to question the validity of the bonds or any provisions made for their security or payment, the Third Circuit addressed the peremptive effects of the provisions of La. Const, art. VI, § 35, in the context of a bond validation suit. Sabine River Authority, 74 So.3d at 281-283.
117Louisiana Constitution article VI, section 35(B) provides that “[ejvery ... resolution authorizing the issuance of bonds ... by a political subdivision shall be published at least once in the official journal of the political subdivision or, if there is none, in a newspaper having general circulation therein.” (Emphasis added). For thirty days after the date of publication of the resolution authorizing the issuance of bonds, any person in interest shall have the right to contest the legality of the resolution and the legality of the bond issue for any cause. La. Const, art. VI, § 35(B). After the thirty-day period, any right to test the regularity, formality, legality or effectiveness of the resolution, including any of its provisions, is extinguished, and it is conclusively presumed that every legal requirement for the issuance of the bonds has been satisfied. La. Const, art. VI, § 35(B); La. R.S. 33:4548.6(1).[7]
In Sabine River Authority, the Third Circuit noted that La. Const, art. VI, § 35(B) and the Bond Validation Act go “hand in hand.” Sabine River Authority, 74 So.3d at 281. Reading these provisions together, the appellate court concluded that the “appropriate inquiry” in the bond validation suit [ 1Rbefore it was whether the political subdivision had complied with the provisions of La. Const, art. VI, § 35 by publishing its resolution authorizing the issuance of bonds and whether any interested party had objected to the bond resolution within the thirty-day period following such publication. The appellate court further held that in the event of compliance with La. Const, art. VI, § 35(B) and no timely challenge, a conclusive legal presumption of the validity of the bonds and the security provisions is established, and “the court ha[s] no authority to consider any challenges or inquire into those matters.” Sabine River Authority, 74 So.3d at 282-283 (emphasis added).
*241 The political subdivision in Sabine River Authority presented proof that it had published its bond resolution in compliance with the provisions of La. Const, art. VI, § 35(B) and that no interested party had objected. Thus, the Third Circuit concluded that once the district court was presented with compliance with the provisions of La. Const, art. VI, § 35(B), as well as evidence of compliance with the procedures set forth in the Bond Validation Act, the trial court had no authority to inquire into the matters of the validity of the bond resolution or provisions for the security and payment of the bonds. Sabine River Authority, 74 So.3d at 283.
In the instant case, however, the LCDA did not allege, or offer proof, that it had published the bond resolution authorizing the PACE bonds in its official journal in accordance with La. Const, art. VI, § 35(B). Thus, no conclusive presumption that “every legal requirement for the issuance of the bonds has been satisfied” was established herein, and the LCDA was not relieved of its burden of proof under the Bond Validation Act (even in the absence of any opposition filed to its Motion for Judgment) to present 119evidence to enable this court to “consider and pass upon questions certified” in such motion. La. R.S. 13:5126.
Accordingly, in the absence of additional evidence herein, this court is unable to “consider and pass upon [the] questions certified” in the LCDA’s motion for judgment as to the validity of the proceedings authorizing the issuance of the PACE bonds, La. R.S. 13:5126, and is likewise unable to determine whether “a substantial defect, material error, or omission exists” in those proceedings. La. R.S. 13:5130. For these reasons, we conclude that the LCDA failed to carry its burden of establishing its entitlement to judgment as prayed for under the Bond Validation Act, and we affirm the district court’s denial of the Motion for Judgment on this basis.[8]
We note, however, that the Bond Validation Act provides that the governing body of a governmental unit may bring a proceeding to establish the validity of a proposed bond issuance “at any time.” La. R.S. 13:5123. Moreover, in light of this court’s authority to render any judgment on the record before us that is “just, legal, and proper,” we amend the district court’s judgment to dismiss the LCDA’s Motion for Judgment without | ^prejudice, thereby allowing the LCDA to seek further relief in the future, upon proper proof, pursuant to the Bond Validation Act, with regard to its proposed issuance of the PACE bonds. See La. C.C.P. art. 2164.

*242
CONCLUSION

For the above and foregoing reasons, we amend the January 7, 2015 judgment of the district court, denying the Motion for Judgment, to further provide that the bond validation action filed by the Louisiana Local Government Environmental Facilities and Community Development Authority is dismissed without prejudice. As amended, the January 7, 2015 judgment is affirmed.
Costs of this appeal in the amount of $674.00 are assessed against the Louisiana Local Government Environmental Facilities and Community Development Authority-
AMENDED AND, AS AMENDED, AFFIRMED.
DRAKE, J., concurs in part and dissents in part for written reasons assigned.
WELCH, J., concurs in part and dissents in part with reasons assigned.

. In its Memorandum in Support of Motion for Judgment, the LCDA stated that because of the lack of qualifying projects that have been financed pursuant to the provisions of the Sustainable Energy Financing Law since its enactment in 2009 and the novelty of the program to finance such qualifying improvements pursuant thereto, the LCDA instituted this proceeding to assist with the marketability of the PACE bonds.

. The Motion for Judgment and notice of the hearing were published in the Baton Rouge and New Orleans editions of The Advocate.

. Notably, the district court did not specifically declare the service by publication provision of the Bond Validation Act, La. R.S. 13:5124(A), or any other part of the Act unconstitutional.

. In Denham Springs Economic Development District the individual defendants asserted that their due process rights were violated because they were not personally served with a bond resolution and that "notice by publication" was insufficient. Denham Springs Economic Development District, 945 So.2d at 680. The statutory framework at issue therein, La. R.S. 33:9038.31, et seq. (formerly La. R.S. 33:9038.1 et seq.), provided that when the political subdivision adopted a bond resolution, it was required to publish the bond resolution in the official journal of the political subdivision. For 30 days thereafter, any person in interest may contest the legality of the resolution and any provision therein made for the security and payment of the bonds. However, after expiration of that 30-day period, no person shall have any cause of action to test the regularity, formality, legality or effectiveness of the resolution and provisions thereof for any cause whatever. See La. R.S. 33:9038.34(L) (formerly La. R.S. 33:9038.4(L)). As noted by the Supreme Court therein, La. Const, art. VI, sec. 35(B) similarly provides for publication of a bond resolution of a political subdivision in the official journal together with a 30-day per-emptive period within which to challenge the bond resolution. Denham Springs Economic Development District, 945 So.2d at 675-676.

. Having so concluded, we pretermit consideration of the LCDA’s contentions regarding the propriety of the district court raising such due process concerns' regarding notice in the absence of any challenge or opposition to the LCDA’s Motion for Judgment by any party.

. Louisiana Revised Statute 13:5123 provides, in part, that the governing body of any governmental unit proposing to issue bonds may bring a proceeding to establish, among other things, the validity of the bonds and "all proceedings theretofore taken in connection with the authorization or issuance of such bonds.”

. The Community Development Act similarly provides:
For a period of thirty days from the date of publication of the resolution authorizing the issuance of bonds hereunder, any persons in interest shall have the right to contest the legality of the resolution and the legality of the bond issue for any cause after which time no one shall have any cause or right of action to contest the legality of said resolution or of the bonds authorized thereby for any cause whatsoever. If no suit, action, or proceeding is begun contesting the validity of the bond issue within the thirty days herein prescribed, the authority to issue the bonds and to provide for the payment thereof, and the legality thereof and all provisions of the resolution authorizing the issuance of the bonds shall be conclusively presumed, and no court shall have authority to inquire into such matters.
La. R.S. 33:4548.6(1).

. We further note that pursuant to La. R.S. 33:4548.9 of the Community Development Act, “[t]he approval of the State Bond Commission shall be obtained prior to the issuance of any bonds of the authority pursuant to the rules and regulations of the State Bond Commission.” See also La. R.S. 33:4548.6(L) ("No bond or other obligation shall be issued under any provision of this Chapter unless first authorized by the State Bond Commission.”).
In the instant case, there is no evidence of approval of the State Bond Commission with regard to the PACE bonds. Rather, in its Memorandum in Support of Motion for Judgment, the LCDA stated that it will seek approval to issue the bonds from the State Bond Commission prior to issuance of the bonds. Inasmuch as La. R.S. 13:5123 of the Bond Validation Act provides that a governmental unit may, at any time, seek to establish, among other things, the validity of “all proceedings theretofore taken in connection with the authorization or issuance of such bonds,” our ruling today clearly expresses no opinion as to the validity of any future actions or proceedings by the LCDA to obtain such approval of the State Bond Commission. (Emphasis added).